# EXHIBIT 2

 

# ANTITRUST GUIDANCE FOR HUMAN RESOURCE PROFESSIONALS

## DEPARTMENT OF JUSTICE ANTITRUST DIVISION

## FEDERAL TRADE COMMISSION

## OCTOBER 2016

This document is intended to alert human resource (HR) professionals and others involved in hiring and compensation decisions to potential violations of the antitrust laws. The Department of Justice Antitrust Division (DOJ or Division) and Federal Trade Commission (FTC) (collectively, the federal antitrust agencies) jointly enforce the U.S. antitrust laws, which apply to competition among firms to hire employees. An agreement among competing employers to limit or fix the terms of employment for potential hires may violate the antitrust laws if the agreement constrains individual firm decision-making with regard to wages, salaries, or benefits; terms of employment; or even job opportunities. HR professionals often are in the best position to ensure that their companies' hiring practices comply with the antitrust laws. In particular, HR professionals can implement safeguards to prevent inappropriate discussions or agreements with other firms seeking to hire the same employees.

## *The antitrust laws establish the rules of a competitive employment marketplace.*

Free and open markets are the foundation of a vibrant economy. Just as competition among sellers in an open marketplace gives consumers the benefits of lower prices, higher quality products and services, more choices, and greater innovation, competition among employers helps actual and potential employees through higher wages, better benefits, or other terms of employment. Consumers can also gain from competition among employers because a more competitive workforce may create more or better goods and services.

From an antitrust perspective, firms that compete to hire or retain employees are competitors in the employment marketplace, regardless of whether the firms make the same products or compete to provide the same services. It is unlawful for competitors to expressly or implicitly agree not to compete with one another, even if they are motivated by a desire to reduce costs. Therefore, HR professionals should take steps to ensure that interactions with other employers competing with them for employees do not result in an unlawful agreement not to compete on terms of employment. Any company, acting on its own, may typically make decisions regarding hiring, soliciting, or recruiting employees. But the company and its employees should take care not to communicate the company's policies to other companies competing to hire the same types of employees, nor ask another company to go along.

The federal antitrust agencies have taken enforcement actions against employers that have agreed not to compete for employees. Based on those cases, here are some general principles to help HR professionals and the companies they represent avoid running afoul of the antitrust laws as they relate to agreements and communications among employers. Note that this guidance does not address the legality of specific terms contained in contracts between an employer and an employee, including non-compete clauses.

Violations of the antitrust laws can have severe consequences. Depending on the facts of the case, the DOJ could bring a criminal prosecution against individuals, the company, or both. And both federal antitrust agencies could bring civil enforcement actions. In addition, if an employee or another private party were injured by an illegal agreement among potential employers, that

party could bring a civil lawsuit for treble damages (i.e., three times the damages the party actually suffered).

## *Agreements among employers not to recruit certain employees or not to compete on terms of compensation are illegal.*

An HR professional should avoid entering into agreements regarding terms of employment with firms that compete to hire employees. It does not matter whether the agreement is informal or formal, written or unwritten, spoken or unspoken.

An individual likely is breaking the antitrust laws if he or she:

- agrees with individual(s) at another company about employee salary or other terms of compensation, either at a specific level or within a range (so-called wage-fixing agreements), or
- agrees with individual(s) at another company to refuse to solicit or hire that other company's employees (so-called "no poaching" agreements).

Even if an individual does not agree orally or in writing to limit employee compensation or recruiting, other circumstances – such as evidence of discussions and parallel behavior – may lead to an inference that the individual has agreed to do so.

Naked wage-fixing or no-poaching agreements among employers, whether entered into directly or through a third-party intermediary, are per se illegal under the antitrust laws. That means that if the agreement is separate from or not reasonably necessary to a larger legitimate collaboration between the employers, the agreement is deemed illegal without any inquiry into its competitive effects. Legitimate joint ventures (including, for example, appropriate shared use of facilities) are not considered per se illegal under the antitrust laws.

The DOJ filed a civil enforcement action against the Arizona Hospital & Healthcare Association for acting on behalf of most hospitals in Arizona to set a uniform bill rate schedule that the hospitals would pay for temporary and per diem nurses. The case resulted in a consent judgment. And in the past few years, the DOJ brought three civil enforcement actions against

technology companies (eBay and Intuit, Lucasfilm and Pixar, and Adobe, Apple, Google, Intel, Intuit, and Pixar) that entered into "no poach" agreements with competitors. In all three cases, the competitors agreed not to cold call each other's employees. In two cases, at least one company also agreed to limit its hiring of employees who currently worked at a competitor. All three cases ended in consent judgments against the technology companies. The FTC has brought two cases relating to competition for employment. One was against Debes Corp. for entering into agreements to boycott temporary nurses' registries in order to eliminate competition among the nursing homes for the purchase of nursing services. The FTC also brought a case against the Council of Fashion Designers of America and the organization that produces the fashion industry's two major fashion shows for attempting to reduce the fees and other terms of compensation for models. Both cases ended in consent judgments.

Going forward, the DOJ intends to proceed criminally against naked wage-fixing or no-poaching agreements. These types of agreements eliminate competition in the same irredeemable way as agreements to fix product prices or allocate customers, which have traditionally been criminally investigated and prosecuted as hardcore cartel conduct. Accordingly, the DOJ will criminally investigate allegations that employers have agreed among themselves on employee compensation or not to solicit or hire each others' employees. And if that investigation uncovers a naked wage-fixing or no-poaching agreement, the DOJ may, in the exercise of its prosecutorial discretion, bring criminal, felony charges against the culpable participants in the agreement, including both individuals and companies.

### *Avoid sharing sensitive information with competitors.*

Sharing information with competitors about terms and conditions of employment can also run afoul of the antitrust laws. Even if an individual does not agree explicitly to fix compensation or other terms of employment, exchanging competitively sensitive information could serve as evidence of an implicit illegal agreement. While agreements to share information are not per se illegal and therefore not prosecuted criminally, they may be subject to civil antitrust liability when they have, or are likely to have, an anticompetitive effect. Even without an express or implicit agreement on terms of compensation among firms, evidence of periodic exchange of current wage

information in an industry with few employers could establish an antitrust violation because, for example, the data exchange has decreased or is likely to decrease compensation. For example, the DOJ sued the Utah Society for Healthcare Human Resources Administration, a society of HR professionals at Utah hospitals, for conspiring to exchange nonpublic prospective and current wage information about registered nurses. The exchange caused defendant hospitals to match each other's wages, keeping the pay of registered nurses in Salt Lake County and elsewhere in Utah artificially low. The case ended in a consent judgment so that registered nurses could benefit from competition for their services.

Even if participants in an agreement are parties to a proposed merger or acquisition, or are otherwise involved in a joint venture or other collaborative activity, there is antitrust risk if they share information about terms and conditions of employment.

However, not all information exchanges are illegal. It is possible to design and carry out information exchanges in ways that conform with the antitrust laws. For example, an information exchange may be lawful if:

- a neutral third party manages the exchange,
- the exchange involves information that is relatively old,
- the information is aggregated to protect the identity of the underlying sources, and
- enough sources are aggregated to prevent competitors from linking particular data to an individual source.

Also, in the course of determining whether to pursue a merger or acquisition, a buyer may need to obtain limited competitively sensitive information. Such information gathering may be lawful if it is in connection with a legitimate merger or acquisition proposal and appropriate precautions are taken.

For more information on information exchanges, you can review the DOJ's and FTC's specific guidance to the healthcare industry on when written surveys of wages, salaries, or benefits are less likely to raise antitrust concerns (see Statement 6).

If your company is considering sharing specific information or otherwise collaborating with competitors regarding compensation or other terms of

employment, and you have questions regarding the legality of the activity, the federal antitrust agencies are available to offer further guidance. The Division has a [business review process](#) that enables businesses to determine how the Division may respond to proposed joint ventures or other business conduct. The FTC has a similar process for obtaining an [advisory opinion](#) for future conduct. When the federal antitrust agencies are able to analyze and comment on the possible competitive impact of proposed business conduct *before* that conduct is implemented, companies are more likely to avoid enforcement investigations and lawsuits.

---

## Questions and Answers

*Question*: I work as an HR professional in an industry where we spend a lot of money to recruit and train new employees. At a trade show, I mentioned how frustrated I get when a recent hire jumps ship to work at a competitor. A colleague at a competing firm suggested that we deal with this problem by agreeing not to recruit or hire each other's employees. She mentioned that her company had entered into these kinds of agreements in the past, and they seemed to work. What should I do?

*Answer*: What that colleague is suggesting is a no-poaching agreement. That suggestion amounts to a solicitation to engage in serious criminal conduct. You should refuse her suggestion and consider contacting the [Antitrust Division's Citizen Complaint Center](#) or the [Federal Trade Commission's Bureau of Competition](#) to report the behavior of your colleague's company. If you agree not to recruit or hire each other's employees, you would likely be exposing yourself and your employer to substantial criminal and civil liability.

*Question*: My friend and I are both managers at different companies in an industry where employee wage growth seems to be out of control. Over lunch, my friend proposed that we could solve this problem by reaching out to other industry leaders to establish a more reasonable pay scale for our employees. Is this legal?

*Answer*: An agreement among competitors to set wages or establish a pay scale is an illegal wage-fixing agreement. If you take your friend's suggestion and form such an agreement on behalf of your company with your

friend or others acting on behalf of their companies, you would likely be exposing yourself and your employer to substantial criminal and civil liability. The DOJ could open a criminal investigation, and if it determines that your agreement is a naked wage-fixing agreement, it could bring criminal charges against you, your employer, your friend, and other individuals or companies that participate in the agreement. Participants could also be subject to substantial civil liability.

Additionally, merely inviting a competitor to enter into an illegal agreement may be an antitrust violation – even if the invitation does not result in an agreement to fix wages or otherwise limit competition. In antitrust terms, an "invitation to collude" describes an improper communication to an actual or potential competitor that you are ready and willing to coordinate on price or output or other important terms of competition. For instance, the FTC took action after an online retailer emailed a competitor to suggest that both companies sell their products at the same price, which was higher than either company was charging. The competitor declined the invitation and notified the FTC. Be aware that private communications among competitors may violate the FTC Act if (1) the explicit or implicit communication to a competitor (2) sets forth proposed terms of coordination (3) which, if accepted, would constitute a per se antitrust violation.

*Question*: I work as a senior HR professional at a nonprofit organization that works hard to keep costs down so we can serve more people. One idea we had is to cap wage increases for certain employee groups, but we are worried that we might lose employees to other nonprofit organizations that don't cap wage increases. So, I would like to call other nonprofit organizations in my region to ask them if they would consider a cap on wage growth rates as well. Should I do that? What if, instead of reaching out to other nonprofit organizations directly, we all agree to hire the same consultant who communicates the pay scale to the nonprofit organizations?

*Answer*: No. You would likely violate antitrust law if you and the other nonprofit organizations agreed to decrease wages or limit future wage increases. A desire to cut costs is not a defense. Your nonprofit organization and the others are competitors because you all compete for the same employees. It does not matter that your employer and the other organizations are not-for-profit; nonprofit organizations can be criminally or civilly liable for antitrust law violations. It also makes no difference if you propose to hire a consultant who will determine and set the pay scale; employing a third-

party intermediary does not insulate you or your organization from liability under the antitrust law.

*Question:*  I work in the HR department of a university that sometimes gets into bidding wars to attract faculty from rival institutions. Those efforts rarely succeed, but they take up a lot of time, energy, and resources. Recently someone in the Dean's office told me that we now had a "gentleman's agreement" with another university not to try to recruit each other's senior faculty. There isn't a written agreement, and efforts to hire each other's faculty were rarely successful. Is this okay?

*Answer*: No. An illegal agreement can be oral; it need not be written down on paper. This conduct is similar to the conduct challenged by the Division in its recent no-poaching cases involving [eBay](), [Lucasfilm](), and [Adobe](), and the FTC in its cases against [Debes Corp.]() and the [Council of Fashion Designers](). If the no-poaching agreement is naked, that is, separate from or not reasonably necessary to a larger legitimate collaboration between the universities, it is conduct that the Division will criminally investigate and may decide to criminally prosecute, charging institutions or individuals or both.

If you stopped recruiting and bidding for faculty from another university due to a gentleman's agreement, you have become a member of that no-poaching agreement and could be subject to criminal liability. You should take no further action to comply with that agreement, and notify your university's legal counsel of the university's participation in this illegal agreement. The university may wish to report the conduct to the Division under its Corporate Leniency Policy, which provides that the first qualifying corporation (including universities and other non-profit entities) to report the antitrust offense and cooperate with the Division's investigation will not be criminally charged for the reported antitrust offense. If you have already participated in the illegal agreement, you may wish to report the conduct to the Division under its Leniency Policy for Individuals, which provides that the first qualifying individual to report the antitrust offense and cooperate with the Division's investigation will not be criminally charged for the reported antitrust offense. For more information on these policies, see [this link]().

*Question:* I am the CEO of a small business. In my industry, firms traditionally offer gym memberships to all employees. Gym membership fees are increasing, so I would like to stop offering memberships, but I am worried

that current employees will become disgruntled and move to other companies. I would like to ask other firms in the industry to stop offering gym memberships, as well. Can I do that?

*Answer:* No, you would likely violate antitrust law if you and the other companies agreed to cease offering gym memberships. Job benefits such as gym membership, parking, transit subsidies, meals, or meal subsidies and similar benefits of employment are all elements of employee compensation. An agreement with a competitor to fix elements of employee compensation is an illegal wage-fixing agreement.

*Question*: I am an HR professional who serves on the board of our industry's professional society. We are interested in determining current and future trends in industry wages. Can we distribute a survey asking companies within the industry about current and future wages?

*Answer*: It may be unlawful for you, a member of the industry, to solicit a competitor's company-specific response to a wage survey that asks about current or future wages, or to respond to a competitor's request to provide such information. In addition, it may be unlawful for the professional society to distribute company-specific information about past, current, and future wages. Competitors' exchange of nonpublic, company-specific information about current and future wages may violate antitrust law, unless certain survey procedures are followed to mitigate the risk of competitive harm.

For more guidance on the antitrust treatment of information exchanges among competitors, see Statement 6 of the DOJ's and FTC's [guidance to the healthcare industry](#).

*Question*: I am a new HR professional, and I am attending my first professional conference next week. What should I watch out for to avoid violating antitrust law?

*Answer*: You should not enter into agreements about employee compensation, other terms of employment, or employee recruitment with other HR professionals who work at competitors, meaning other companies that compete for the same types of employees. Also, avoid discussing specific compensation policies or particular compensation levels with HR professionals who work for competitors.

### *Other resources are available.*

The federal antitrust agencies have prepared a list of red flags that HR professionals and others should look out for in employment settings.

### *When in doubt, seek legal assistance.*

If HR professionals have questions regarding whether particular conduct violates the antitrust laws, they should consider seeking legal advice.

### *Report potential violations.*

If HR professionals or other interested parties have information about a possible antitrust violation regarding agreements among competitors to fix wages, salaries, benefits, or other terms of employment, or agreements not to compete for employees in hiring decisions, the federal antitrust agencies encourage them to report such conduct.

Reports can be made to the Division through the Citizen Complaint Center by e-mail (antitrust.complaints@usdoj.gov), phone (1-888-647-3258, toll free in the U.S. and Canada, or 202-307-2040), or mail (Citizen Complaint Center, 950 Pennsylvania Avenue, NW, Room 3322, Washington, DC 20530).

Reports can be made to the FTC through the Bureau of Competition's Office of Policy and Coordination by email (antitrust@ftc.gov), phone (202-326-3300), or mail (Office of Policy and Coordination, Room CC-5422, Bureau of Competition, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC 20580).

The federal antitrust agencies encourage HR professionals or others with information to use the following questions as a guideline to describe your complaint.

- What are the names of companies, individuals, or organizations that are involved?
- In what manner have these companies, individuals, or organizations potentially violated the federal antitrust laws?

- What examples can you give of the conduct that you believe may violate the antitrust laws? Please provide as much detail as possible.
- Who is affected by this conduct?
- How do you believe competition may have been harmed?
- What is your role in the situation?

With respect to potential criminal violations, in particular, it can be beneficial to report personal involvement in an antitrust violation quickly. Through the Division's leniency program, corporations can avoid criminal conviction and fines, and individuals can avoid criminal conviction, prison terms, and fines, by being the first to confess participation in a criminal antitrust violation, fully cooperating with the Division, and meeting other specified conditions. Additional information about the leniency program is available [here](#).