# **EXHIBIT 6**

The New York Times

OP-ED CONTRIBUTORS

# Corporate America Is Suppressing Wages for Many Workers

By Alan B. Krueger and Eric Posner

Feb. 28, 2018

Even after eight years of economic recovery and steady private-sector job growth, wages for most Americans have hardly budged. It is tempting to think that wage stagnation is intractable, a result of long-term trends, like automation and globalization, that government is powerless to do anything about.

In fact, a growing body of evidence pins much of the blame on a specific culprit, one for which proven legal weapons already exist. But they are not being used.

The culprit is "monopsony power." This term is used by economists to refer to the ability of an employer to suppress wages below the efficient or perfectly competitive level of compensation. In the more familiar case of monopoly, a large seller — like a cable company — is able to demand high prices for poor service because consumers have no other choice. It turns out that many corporations possess bargaining power over their workers, not just over their consumers. Their workers accept low wages and substandard working conditions because few alternative job opportunities exist for them or because switching jobs is costly. In other words, in the labor market, effectively a small number of employers are competing for their labor.

Monopsony power is frequently created through noncompete clauses and no-poaching agreements and is aimed at the most vulnerable workers. Employers like Jimmy John's have discovered that they can control and intimidate workers by putting terms in their contracts that limit their ability to find new jobs even after they leave their old one. Jimmy John's discontinued this practice in response to public outcry and litigation, but

noncompete clauses remain ubiquitous.



Jimmy John's discontinued its noncompete requirements for sandwich makers in response to public outcry and litigation.  Glen Stubbe/Minneapolis Star Tribune

In a new study for the Brookings Institution's Hamilton Project, we report survey results in which we find that one in five workers with a high school education or less are subject to a noncompete. A quarter of all workers are covered by a noncompete agreement with their current employer or a past one.

You have 3 free articles remaining.
Subscribe to The Times

Just as astounding, over half of major franchises forbid their franchisees from competing for one another's workers, up from 36 percent in 1996. Businesses have also discovered that they can push down labor costs by outsourcing work. Because outsourcing companies may have greater labor market power than the original firms, they can reduce workers' wages.

For a long time, economists believed that labor-market monopsony rarely existed, at least outside old-fashioned company towns where a single factory employs most of the residents. But in recent decades, several compelling studies have revealed that monopsony is omnipresent. Professionals like doctors and nurses, workers in factories and meat processing plants, and sandwich makers and other low-skill workers earn far less — thousands of dollars less — than they would if employers did not dominate labor markets.

The studies show that common features of the labor market give enormous bargaining advantages to employers. Because most people sink roots in their communities, they are reluctant to quit their job and move to a job that is far away. Because workplaces differ in terms of their location and conditions, people have trouble comparing them, which means that one cannot easily "comparison shop" for jobs. And thanks to a wave of consolidation, industries are increasingly dominated by a small number of huge companies, which means that workers have fewer choices among employers in their area.

When employers exercise monopsonistic power, wages are suppressed, jobs are left unfilled, and economic growth suffers. Unions used to offset employer monopsony power, but unions now represent only 7 percent of private sector workers, down from a peak of 35 percent in the 1950s. Combating the practices that employers use to monopsonize the labor market can lead to higher wages, more jobs and faster economic growth.

During the Obama administration, the government awoke to the problem of monopsony. It was then that the public learned that high-tech companies, including Google and Apple, had agreed not to poach one another's talent, a flagrant monopsonistic tactic that brought down the wrath of the Justice Department.

Yet no-poaching agreements have continued unabated. The current head of the Justice Department's Antitrust Division, Makan Delrahim, says he is "shocked" by the widespread use of such agreements. The department is reportedly pursuing criminal investigations of companies involved in the practice. Meanwhile, civil litigation has been brought against McDonald's and Carl's Jr. for using no-poaching agreements among their franchisees.

While the movement against no-poaching agreements is a good first step, much more can

be done to counter monopsonistic practices. First, the Justice Department and the courts need to make clear that no-poaching agreements are illegal even when they take place within franchises. Democratic Senators Elizabeth Warren and Cory Booker are preparing to propose such a bill next week.

Second, Congress should bar employers from subjecting low-income workers to noncompete clauses. These clauses serve no lawful business purpose when workers do not receive substantial training, while they cause significant hardship. A few states ban or significantly restrict noncompetes, but the federal government must step in.

Third, the Justice Department should block mergers that unduly reduce labor market competition. The antitrust division screens mergers for antitrust violations, but its guidelines do not even mention that mergers can reduce labor-market competition. Amending the guidelines to address the labor market effects of mergers should be a priority.

Antitrust reform to address labor market abuses is one of those rare issues that could secure bipartisan agreement. Democrats should support reform because it would help workers and lower-income families. Antitrust violations are also counter to the free-market ideals that Republicans claim to hold.

In a recent exchange of letters, Senators Warren and Booker have pressed the Justice Department to discharge its responsibilities. In its response, the Justice Department professed it "takes very seriously its mission to protect competition, which benefits both consumers and workers." We hope it will live up to its word.

Eric Posner is a professor at the University of Chicago Law School and a co-author of the forthcoming "Radical Markets: Uprooting Capitalism and Democracy for a Just Society." Alan B. Krueger is a professor of economics and public affairs at Princeton University.

Follow The New York Times Opinion section on Facebook and Twitter (@NYTopinion), and sign up for the Opinion Today newsletter.