UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARLEY BLANTON, on Behalf of
Himself and All Others Similarly Situated,

    Plaintiff,

v.

DOMINO'S PIZZA FRANCHISING LLC,
DOMINO'S PIZZA MASTER ISSUER
LLC, DOMINO'S PIZZA LLC, and
DOMINO'S PIZZA, INC.,

    Defendants.
_____/

Case No. 18-13207
District Judge Victoria A. Roberts
Magistrate Judge David R. Grand

## **OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Doc. #26)**

### I. INTRODUCTION

On October 15, 2018, Harley Blanton, individually and as a representative of similarly-situated persons, filed suit against Defendants Domino's Pizza Franchising LLC, Domino's Pizza Master Issuer LLC, Domino's Pizza LLC, and Domino's Pizza, Inc. (collectively, "Defendants").

Blanton says Defendants violated the Sherman Antitrust Act by orchestrating an employee no-hire agreement among their nationwide network of franchisees. Under the no-hire provision at issue—included in every Domino's franchise agreement from at least January 2013 to April 2018—Domino's franchisees agreed not to solicit or hire current employees of other Domino's franchisees and affiliated entities.

Blanton alleges that this is a "horizontal" restraint of trade that is sufficiently pled. Defendants disagree and move to dismiss under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6); they say that Blanton failed to sufficiently allege injury and state a claim upon which relief can be granted. Oral argument was heard on April 15, 2019.

The Court finds that Blanton has sufficiently pled a horizontal restraint of trade between franchisees at the same level. The Court also finds that—contrary to what Defendants urge—it need not now decide what standard of review will ultimately govern once all facts become known.

Defendants' motion to dismiss is **DENIED**.

## II.     BACKGROUND

Blanton worked for a Domino's franchise in Port Orange, Florida, from January 2017 until April or May of that year; he says he quit because his hours were repeatedly cut back. The Domino's franchise that Blanton worked for is one of many in the nation that signed the Domino's franchise agreement and agreed to the no-hire provision.

Defendant Domino's Pizza Franchising, LLC—the current franchising arm of Defendant Domino's Pizza, Inc.—enters into a standard franchise agreement with each new Domino's franchise owner; Domino's franchises are independently owned and operated as separate entities from Defendants.

Until at least April of 2018, each franchise agreement included the no-hire provision. The no-hire provision required franchisees to agree not to:

> Directly or indirectly, solicit or employ any person who is employed by Domino's, by any entity controlled by or affiliated with Domino's, or by any other of our franchisees, nor will you induce any of these people to leave their employment without the prior written consent of their employers.

[Doc. No. 1, pp. 3].

This provision prohibits a Domino's franchisee from recruiting or hiring a current employee of another Domino's franchisee without prior written consent. Franchisees also agree that a violation of the no-hire provision will cause "irreparable harm" to Defendants; moreover, a violation triggers termination of the violating franchisee's franchise agreement.

Blanton says that Defendants used the franchise agreements to orchestrate a conspiracy among their franchisees to not compete for labor; Blanton says that the no-hire provision is evidence of that conspiracy and violates the Sherman Antitrust Act because it unreasonably restrains competition for Domino's franchise employees and depresses employee wages, lessens employee benefits, and stifles employee mobility.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," see Rule 8(a)(2), the statement of the claim must be plausible. Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled factual allegations. *Id*. The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**IV.    ANALYSIS**

**A. Antitrust Overview**

The Sherman Antitrust Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1.

The Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . and shall recover threefold the damages by him sustained." 15 U.S.C. § 15. Claims brought under the Sherman Antitrust Act are subject to a four-year statute of limitations from the date "the cause of action accrued." *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 598 (6th Cir. 2014).

Because Defendants spend considerable time in their papers discussing the standard of review that the Court should apply in deciding whether Blanton plausibly states a Sherman Act violation, the Court will address the standard of review. However, the Court's attention is on whether the allegations are sufficient to demonstrate that Defendants entered into agreements with franchisees that resulted in less mobility and

4

lower wages for employees. The focus is on whether the allegations themselves are sufficiently specific to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

Under the Sherman Act, restraints of trade are classified as either vertical or horizontal. Courts typically analyze vertical restraints of trade—agreements made between entities at different levels of the distribution chain—under the "rule of reason" standard. *See Com-Tel, Inc. v. DuKane, Corp.*, 669 F.2d 404, 409 (6th Cir. 1982) (quoting *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 131 (2d Cir. 1978)).

Courts use rule of reason analysis where an agreement's "competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed." *Nat'l Soc. Of Prof'l Engineers v. United States*, 435 U.S. 679, 692 (1978). "Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition . . . Appropriate factors to take into account include . . . 'the restraint's history, nature, and effect.'" *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885-86 (2007).

Horizontal restraints—which Blanton alleges is the restraint Defendants engage in—are agreements made between entities operating at different levels of distribution. By contrast, they are deemed *per se* illegal. Horizontal restraints are typically characterized as "naked restraints of trade with no purpose except stifling competition," and "therefore, [are] *per se* violations of the Sherman Act." *Com-Tel, Inc.*, 669 F.2d at 409 (quoting *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 131 (2d Cir. 1978)); a naked restraint of trade is one "in which the restriction on competition is unaccompanied by new

5

production or products . . . If two people meet one day and decide not to compete, the restraint is 'naked'; it does nothing but suppress competition." *Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985).

Not all horizontal restraints are "naked" restraints of trade. Indeed, horizontal restraints that are ancillary to procompetitive agreements are typically judged under the rule of reason. *See Deslandes v. McDonald's USA, LLC*, No. 17-C-4857, 2018 WL 3105955, at *7 (N.D. Ill. June 25, 2018); *see also Polk Bros.*, 776 F.2d at 188-89 ("If A hires B as a salesman and passes customer lists to B, then B's reciprocal covenant not to compete with A is 'ancillary.' At the time A and B strike their bargain, the enterprise (viewed as a whole) expands output and competition by putting B to work . . . Covenants of this type are evaluated under the Rule of Reason as ancillary restraints, and unless they bring a large market share under a single firm's control they are lawful.").

Finally, there is a third, intermediate mode of analysis—which courts refer to as the "quick-look" approach. Courts take a "quick-look" where the *per se* rule is inapplicable, but the anticompetitive effects of an agreement are so obvious that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *California Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770 (1999).

Blanton challenges what he says is a horizontal restraint of trade that is so pernicious that it is a *per se* violation of the Sherman Act. Alternatively, Blanton says he has sufficiently pled a claim under the "quick look" approach, but reiterates the precise standard need not be decided by the Court now.

**B. Blanton Sufficiently Alleges Article III Standing and Antitrust Injury**

Defendants say Blanton's complaint should be dismissed for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1). They also say Blanton fails to allege antitrust injury. The Court disagrees.

To establish Article III standing, a plaintiff must plead facts showing actual injury, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Moreover, an antitrust plaintiff must establish antitrust injury, "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).

Blanton pleads that Defendants' no-hire provision "harmed [Domino's franchise] employees by lowering the salaries and benefits employees otherwise would have commanded in a competitive marketplace." Blanton says that his own wages were depressed.

Economic injuries like this "have long been recognized as sufficient to lay the basis for [Article III] standing." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972); *see also Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) ("concrete financial injuries, namely deprivation of wages . . . are prototypical of injuries for the purposes of Article III standing.").

Blanton also alleges causation and redressability. He asserts that his depressed wages were a direct result of the allegedly unlawful no-hire agreement; further, he seeks treble damages, which would more than make up for lost wages.

The Court finds that Blanton has sufficiently alleged standing.

Blanton also sufficiently alleges antitrust injury. Blanton contends that Defendants' no-hire agreement is "a conspiracy not to compete for labor." As discussed above, Blanton says the conspiracy had the purpose and effect of depressing wages and limiting the employment mobility of Domino's franchise employees, including himself. Blanton also alleges that Domino's franchises compete against one another for labor.

"The relevant cases hold that plaintiffs whose opportunities in the employment market have been impaired by an anticompetitive agreement directed at them as a particular segment of employees have suffered an antitrust injury under the governing standard." *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 544 (10th Cir. 1995) (citing *Radovich v. National Football League*, 352 U.S. 445 (1957)); *see also Phillip Areeda & Herbert Hovenkamp, Antitrust Law* ¶ 377c (rev. ed. 1995) ("[a]ntitrust law addresses employer conspiracies controlling employment terms precisely because they tamper with the employment market and thereby impair the opportunities of those who sell their services there . . . An employee overcomes the primary hurdle to standing when he shows that the alleged violation restrains competition in the labor market.").

Blanton alleges facts sufficient to show Article III standing and antitrust injury.

### C. Blanton Pleads a Plausible Violation of the Sherman Act

Blanton says that the no-hire provision is a *per se* violation of the Sherman Act; he argues that the no-hire provision is evidence of the type of horizontal agreement that courts always deem *per se* illegal. Courts hold that this type of restraint has such a clear lack of redeeming value that it is conclusively presumed to be unreasonable. *See Expert Masonry, Inc. v. Boone Cty., Ky.*, 440 F.3d 336, 342 (6th Cir. 2006).

8

In the alternative, Blanton says that the no-hire provision is illegal under the quick-look approach. Defendants disagree and urge the Court to apply the "rule of reason" approach discussed above and dismiss Blanton's complaint. Notably, Defendants rely on a number of summary judgment and trial decisions in their motion papers, both of which are improper at this stage—where the Court is only to evaluate the sufficiency of the pleadings.

The Court declines to announce a rule of analysis at this juncture. More factual development is necessary. The Court does find that Blanton pled a plausible violation of the Sherman Act.

The essential elements of a violation of Section 1 of the Sherman Act are: (1) a contract, combination, or conspiracy; (2) affecting interstate commerce; (3) which imposes an unreasonable restraint on trade. *White and White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983). As discussed, an antitrust plaintiff must also plead antitrust injury, "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Valley Products Co., Inc. v. Landmark, a Div. of Hospitality Franchise Systems, Inc.*, 128 F.3d 398, 402 (6th Cir. 1997) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

Blanton says Defendants orchestrated an agreement not to compete for labor among their franchisees; he says that franchisees, by signing the franchise agreement, tacitly agree not to hire one another's employees—an agreement he says is evidenced by the provision that allows franchisees the power to waive the no-hire restraint.

Further, Blanton says this agreement lowered the wages and depressed the mobility of a nationwide class of Domino's employees.

Blanton has plausibly pled a "contract, combination, or conspiracy" affecting interstate commerce, in violation of Section 1 of the Sherman Act. Blanton has also plausibly alleged that the agreement is unreasonable under both the *per se* rule and quick-look analysis. He sufficiently alleges that the agreement "has such a clear lack of redeeming value that it is conclusively presumed to be unreasonable"; he also sufficiently pleads that the anticompetitive effects of the agreement are so obvious that "an observer with even a rudimentary understanding of economics could conclude that [the agreement] in question would have an anticompetitive effect on customers and markets."  However, as discussed, more factual development is necessary to determine which standard of review will apply to the no-hire provision.

**D. Blanton States a Plausible Claim Against all Defendants**

Defendants say that Domino's Pizza Master Issuer LLC, Domino's Pizza LLC, and Domino's Pizza, Inc. should be dismissed because Blanton fails to plead facts sufficient to plausibly allege their involvement in the purported conspiracy. Defendants say that Blanton's only allegations with respect to the non-franchisor defendants pertain to places of incorporation and corporate affiliation; most importantly, Defendants claim that no allegations plausibly connect the non-franchisor defendants to the challenged provision.

Defendants misrepresent Blanton's complaint.

To state a plausible antitrust conspiracy claim, the allegations in the complaint must "be specific enough to establish the relevant 'who, what, where, when, how, or why.'"

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012). The complaint must also "specify how [each] defendant [was] involved in the alleged conspiracy." *Id.* "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the conspiracy" is insufficient. *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2012 WL 2114997, at *8 (E.D. Mich. June 11, 2012).

Contrary to Defendants' assertions, Blanton sufficiently alleges the role each Defendant played in the purported conspiracy. Blanton alleges more than mere corporate affiliation and place of incorporation; he says that each Defendant either acted as franchisor or was otherwise involved in the franchising process with respect to franchise agreements still in effect over the past four years.

Simply put, Blanton's allegations are sufficient to allow this Court to reasonably infer the involvement of all Defendants in the alleged conspiracy. *See Bredesen*, 500 F.3d at 527 ("[i]n deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled factual allegations."). *See also Catlin Indem. Co. v. Westfield Ins. Co.*, No. 14-13685, 2015 WL 5728838, at *2 (E.D. Mich. Sept. 30, 2015) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Twombly*, 550 U.S. at 556).

Blanton plausibly alleges the involvement of all Defendants in the purported conspiracy.

### E. Blanton Sufficiently Pleads Fraudulent Concealment

Blanton seeks to represent a class of plaintiffs that goes back more than four years; he argues that the four-year statute of limitations for Sherman Act claims should be tolled because Defendants fraudulently concealed their conspiracy.

Defendants say that Blanton's allegation of fraudulent concealment should be stricken; they say Blanton fails to plead the requisite elements with the particularity required by Federal Rule of Civil Procedure 9(b). Specifically, Defendants assert that they could not have wrongfully concealed the no-hire provision because it was publicly available, and they claim that Blanton impermissibly fails to plead the affirmative steps he took to discover his cause of action within the statute of limitations period. Again, Defendants are wrong.

Federal Rule of Civil Procedure 9(b) mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

To state a claim of fraudulent concealment, a plaintiff must plead "'(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Importantly, "[t]he requirement of diligence is only meaningful, however, when facts exist that would excite the inquiry of a reasonable person." *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988); *see also Carrier Corp. v. Outokumpu Oyj.*, 673 F.3d 430, 448 (6th Cir. 2012) ("[t]his would appear to be enough to place [Plaintiff] on inquiry notice, which in turn would require [Plaintiff] diligently to investigate its possible claim.").

Blanton says that Defendants made "false public representations" which concealed the existence of the no-hire provision. Specifically, Blanton claims that Defendants publicly represented that franchisees make their own employment decisions; Defendants also allegedly stated that employees may advance from an entry level position to store owner. Blanton says that the no-hire provision prohibited franchisees from hiring employees of other franchisees; he also says that it operated to limit employee mobility. Given Blanton's assertions, the above statements—if in fact made by Defendants—plausibly operate to conceal the existence of the no-hire provision.

Finally, Blanton sufficiently pleads due diligence, notwithstanding that he does not plead the affirmative steps taken to discover the cause of action. While Defendants claim that the franchise agreement and no-hire provision were publicly available, they fail to say where or how employees could have found them. Instead, Blanton alleges that employees had no access to franchise agreements. He says the 2013 franchise agreement was the only agreement available online; further, he says that the agreement was only available through a third-party website that franchise employees had no reason to know of. Given Blanton's allegations, it is reasonable to infer that Domino's franchise employees had no reason to suspect that the no-hire provision existed.

Blanton plausibly alleges that Defendants fraudulently concealed the existence of the no-hire provision. His allegations are sufficient to create the reasonable inference that members of the potential class were not aware of facts that would require diligence on their part.

## V. CONCLUSION

Blanton's allegations are sufficient to establish both Article III standing and antitrust injury. He also plausibly alleges that all Defendants were involved in the purported conspiracy. Fraudulent concealment is sufficiently pled. Finally—and most importantly—Blanton plausibly alleges that Defendants violated the Sherman Antitrust Act. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) ("the case is just at the complaint stage and the test for whether to dismiss a case at that stage turns on the complaint's plausibility.")

Defendants' motion to dismiss is **DENIED** in its entirety.

 **IT IS ORDERED**.

                                                            S/ Victoria A. Roberts
                                                            Victoria A. Roberts
                                                            United States District Judge

Dated: May 24, 2019