## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HARLEY BLANTON and DEREK PIERSING, on Behalf of Themselves and All Others Similarly Situated, | No. 2:18-cv-13207-VAR-DRG |
| Plaintiff, | Hon. Victoria A. Roberts |
| | Magistrate Judge David R. Grand |
| v. | |
| DOMINO'S PIZZA FRANCHISING LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA MASTER ISSUER LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA LLC, a Michigan Limited Liability Company; and DOMINO'S PIZZA, INC., a Delaware Corporation. | |
| Defendants. | |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE PROCEEDING

Pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6), and for the reasons stated in the accompanying Brief in Support, the defendants Domino's Pizza Franchising LLC, Domino's Pizza Master Issuer LLC, Domino's Pizza LLC, and Domino's Pizza, Inc. ("defendants"), respectfully move this Court for entry of an order compelling arbitration, and dismissing the complaint or staying the

proceeding pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* In support of the motion, the defendants state as follows:

1.     On June 27, 2019, the plaintiffs filed a First Amended Class Action Complaint (the "complaint") in this action.  In part, the complaint added (i) a second named plaintiff, Derek Piersing ("Piersing"), and (ii) a claim brought solely by Piersing on behalf of a purported Washington State sub-class, pursuant to the Washington Consumer Protection Act, RCW 19.86.030.  Dkt. 56.

2.     The complaint alleges that the defendants conspired with each other and Domino's franchisees to unfairly suppress employee wages and restrict employment mobility.

3.     The complaint alleges that plaintiff Blanton was employed with a Domino's franchise, Wilson Pizza Company, in Sullivan, Indiana, and that plaintiff Piersing was employed with a Domino's franchise, Carpe Diem Pizza, Inc., in Washington.  During their respective employment, both of the plaintiffs executed and agreed to be bound by an arbitration agreement.  Those arbitration agreements broadly cover any and all claims arising out of or relating to employment, including claims related to wages.  Blanton's agreement expressly covers claims against franchisors (i.e. the defendants) and defines "the Company", one of the contracting parties, as including "franchisors."

2

4.      Both of the plaintiffs have valid agreements that require binding arbitration of any claims that their wages were unfairly suppressed.    Both arbitration agreements also provide clear and unmistakable evidence that arbitrability questions are for the arbitrator.  In the alternative, the Court should compel arbitration because there is a valid arbitration agreement that encompasses the claims at issue.  The case plainly covers employment related compensation-based claims for unfairly suppressing wages and restricting employment mobility.

5.      Under Sixth Circuit and federal law precedent, the defendants have the right to enforce the arbitration agreements under their terms, or alternatively, also under equitable estoppel and co-conspirator agency theories.

6.      Pursuant to E.D. Michigan LR 7.1(a), counsel for the defendants states that it sought concurrence for this motion from counsel for the plaintiffs, but did not obtain concurrence in the relief sought.

**WHEREFORE,** the defendants respectfully request that the Court enter an order compelling the plaintiffs to arbitration and dismissing the complaint in its entirety or, in the alternative, staying the proceeding pending arbitration.

Dated:  July 18, 2019

J. Robert Robertson
Ill. Bar #6204009
Norman M. Leon
Ill. Bar #6239480
John J. Hamill
Ill. Bar #6217530
Michael S. Pullos
Ill. Bar #6293587
Mary M.M. Shepro
Ill. Bar # 6321508
DLA Piper LLP (US)
444 West Lake Street Suite 900
Chicago, IL 60606-0089
Telephone:   312.368.4060
Facsimile:   312.251.5710
robby.robertson@dlapiper.com
norman.leon@dlapiper.com
john.hamill@dlapiper.com
michael.pullos@dlapiper.com
mary.shepro@dlapiper.com

By: */s/ J. Robert Robertson*

Edward J. Hood (P42953)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
T: 313-965-8591
ehood@clarkhill.com

David H. Bamberger
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: 202-799-4500
Facsimile: 202-799-5000
david.bamberger@dlapiper.com

*Counsel for Defendants*

4

## <u>CERTIFICATE OF SERVICE</u>

I, J. Robert Robertson, do hereby certify that on this 18th day of July 2019, I caused a true and correct copy of the foregoing **DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMSS OR STAY THE PROCEEDING** to be filed with the Clerk of the Court through the ECF system, which gives notice to all parties of record.

*/s/ J. Robert Robertson*
J. Robert Robertson

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HARLEY BLANTON and DEREK PIERSING, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> DOMINO'S PIZZA FRANCHISING LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA MASTER ISSUER LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA LLC, a Michigan Limited Liability Company; and DOMINO'S PIZZA, INC., a Delaware Corporation. <br><br> Defendants. | No. 2:18-cv-13207-VAR-DRG <br><br> Hon. Victoria A. Roberts <br><br> Magistrate Judge David R. Grand |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE PROCEEDING

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.      Whether the Court should dismiss the complaint where the claims are subject to arbitration under the terms of the plaintiffs' arbitration agreements?

2.      Whether the defendants may enforce the arbitration agreement that Piersing entered with the defendants' alleged co-conspirators and compel his claims to arbitration?

i

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013)

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)

*Stolt-Nielsen S.A., et al v. Animalfeeds Int'l Corp.*, 559 U.S. 662 (2010)

*Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79 (2000)

*Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990)

*Danley v. Encore Cap. Grp.* 680 Fed. Appx. 394 (6th Cir. 2017)

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003)

*Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498 (6th Cir. 2007)

*Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 2008 WL 2467979 (6th Cir. June, 18, 2008)

*Bishop v. Gosinger, Inc.*, 692 F. Supp. 2d 762 (E.D. Mich. 2010)

Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(6)

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et. seq.*

# TABLE OF CONTENTS

**Page**

Introduction...............................................................................................1

Factual Background ...............................................................................4

    A. Blanton's Arbitration Agreement ...........................................4

    B. Piersing's Arbitration Agreement .........................................5

    C. The Complaint's Allegations...............................................7

Legal Standard .......................................................................................8

Argument ..............................................................................................12

I.    The Arbitrator Should Decide All Questions of Arbitrability .........................12

II.   The Plaintiffs Must Arbitrate Their Claims Against The Defendants .............13

III.  The Defendants Can Enforce Piersing's Arbitration Agreement......................15

    A. Equitable estoppel requires arbitration of all
       claims asserted by Piersing ...................................................16

    B. As alleged co-conspirators the defendants can
       enforce the arbitration agreement. .......................................20

IV.  The Plaintiffs Cannot Bring Their Claims On A Class-Wide Basis ................22

V.   The Proceeding Should Be Stayed In the Alternative to Dismissal.................23

Conclusion .............................................................................................24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)..................................................................11, 23

*Am. Reliable Ins. Co. v. Arrington*,
269 F. Supp. 2d 758 (S.D. Miss. 2003) ..........................................21

*Arnold v. Arnold*,
920 F.2d 1269 (6th Cir. 1990).............................................3, 16, 19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).........................................................................9

*Bishop v. Gosinger, Inc.*,
692 F. Supp. 2d 762 (E.D. Mich. 2010) ...........................8, 9, 12, 23

*Book Depot P'ship v. Am. Book Co.*,
No. 3:05-CV-163, 2005 WL 1513155 (E.D. Tenn. June 24, 2005) .................13

*Bowden v. Delta Corp.,*
No. 06-345-TBC, 2006 WL 31412307 (E.D. Ky. Nov. 27, 2006) ...................12

*Carey v. Uber Techs., Inc.*,
No. 1:16-CV-1058, 2017 WL 1133936 (N.D. Ohio Mar. 27, 2017)...............10

*Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*,
706 F.2d 155 (6th Cir. 1983)...........................................................14

*Cole v. FES*,
No. 10-12041, 2010 WL 3584270 (E.D. Mich. Sept. 13, 2010) ......................17

*Danley v. Encore Cap. Grp., Inc.*,
680 Fed. Appx. 394 (6th Cir. 2017) ...........................................10, 12

*Elder v. BMO Harris Bank*,
No. CIV. JFM-13-3043, 2014 WL 1429334 (D. Md. Apr. 11, 2014) ...........................21

ii

*Fazio v. Lehman Bros.*,
   340 F.3d 386 (6th Cir. 2003) ............................................................................11

*Green Tree Fin. Corp. Ala. v. Randolph*,
   531 U.S. 79 (2000) ..........................................................................................11

*Hall v. Pac. Sunwear Stores Corp.*,
   No. 15-CV-14220, 2016 WL 1366413 (E.D. Mich. Apr. 6, 2016) ....................9

*Harajli v. Bank of Am.*,
   No. 14-CV-12173, 2014 WL 4965912 (E.D. Mich. Oct. 2, 2014) ..................23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ......................................................................................10

*Huffman v. Hilltop Cos., LLC*,
   747 F.3d 391 (6th Cir. 2014) ..........................................................................14

*In re Auto. Parts Antitrust Litig.*,
   No. 12-MD-02311, 2017 WL 3579753 (E.D. Mich. Apr. 18, 2017) ...............17

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. 2013) ...........................................................11, 19

*James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*,
   No. 5:11-374-DCR, 2014 WL 1281475 (E.D. Ky. Mar. 27, 2014) ............20, 22

*Javitch v. First Union Sec., Inc.*,
   315 F.3d 619 (6th Cir. 2003) ...................................................... 10, 11, 13, 16

*Kruse v. AFLAC Int'l, Inc.*,
   458 F. Supp. 2d 375 (E.D. Ky. 2006) ................................................15, 16, 20

*McClure v. Davis Wright Tremaine*,
   77 Wash. App. 312 (1995) ...............................................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ........................................................................................11

*Moore v. Ferrellgas, Inc.*,
   533 F. Supp. 2d 740 (W.D. Mich. 2008) ..........................................................9

iii

*Morsey Constructors, LLC v. Burns and Roe Enters., Inc.*,
    No. 5:08-CV-23-R, 2008 WL 3833588 (W.D. Ky. Aug. 13, 2008) .................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...................................................................................9, 11, 15

*Multiband Corp. v. Block*,
    No. 11-15006, 2012 WL 1843261 (E.D. Mich. May 21, 2012) .........................9

*Nestle Waters N. Am., Inc. v. Bollman*,
    505 F.3d 498 (6th Cir. 2007)..........................................................................11

*OwnZones Media Network, Inc. v. Sys. In Motion, LLC*,
    No. C14-0994JLR, 2014 WL 4626302 (W.D. Wash. Spet. 15,
    2014) ...............................................................................................................15

*Panepucci v. Honigman Miller Schwartz & Cohn LLP*,
    No. 05-2579, 2008 WL 2467979 (6th Cir. June, 18, 2008) ..............................8

*PFS Investments, Inc. v. Imhoff*,
    No. 11-10142, 2011 WL 1135538 (E.D. Mich. Mar. 25, 2011).................19, 20

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
    259 F. Supp. 2d 531 (N.D. Tex. 2003) ...........................................................20

*Powers Distrib. Co., Inc. v. Grenzebach Corp.*,
    No. 16-12740, 2016 WL 6611032 (E.D. Mich. Nov. 9, 2016)...........................9

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)...................................................................................10, 12

*Richardson v. Bart's Car Store, Inc.*,
    No. 1:14-cv-00707-SEB-DKL, 2014 WL 7184433 (S. D. Ind. Dec.
    15, 2014 ..........................................................................................................15

*Roberson v. Money Tree of Ala., Inc.*,
    954 F. Supp. 1519 (M.D. Ala. 1997)...............................................................21

*Roe v. Nano Gas Techs., Inc.*,
    No. 14-CV-13790, 2015 WL 1952283 (E.D. Mich. Apr. 29, 2015) ..................8

iv

*Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*,
    276 Mich. App. 146, 742 N.W.2d 409 (2007) ................................................... 15

*Stolt-Nielsen S.A., et al v. Animalfeeds Int'l Corp.*,
    559 U.S. 662 (2010) ........................................................................................ 23

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ............................................................................ 15

*Terwilliger v. Greyhound Lines, Inc.*,
    882 F.2d 1033 (6th Cir. 1989) .......................................................................... 19

*Thomas v. Right Choice Staffing Grp., LLC*,
    No. 15-10055, 2015 WL 4078173 (E.D. Mich. July 6, 2015) ........................... 20

*Tobel v. AXA Equitable Live Ins. Co.*,
    No. 298129, 2012 WL 555801 (Mich. Ct. App. Feb. 21, 2012) ....................... 20

*Vanerian v. Charles L. Pugh Co.*,
    279 Mich. App. 431 (2008) .............................................................................. 14

*Vic Wertz Distrib. Co. v. Teamsters Local 1038, Nat'l Conf. of
    Brewery & Soft Drink Workers of the United States of Am. &
    Canada*, 898 F.2d 1136 (6th Cir. 1990) ........................................................... 10

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ..................................................... *passim*

Sherman Act, 15 U.S.C. § 1 .......................................................................... *passim*

Washington Consumer Protection Act, RCW 19.86.030 .............................. 2, 8, 15

**Other Authorities**

Am. Arb. Ass'n Commercial Arb. Rule 7(a) ................................................... *passim*

Am. Arb. Ass'n Employment Arb. Rule 6(a) .................................................. *passim*

Fed. R. Civ. P. 12(b)(1) ................................................................................ 8, 9, 25

Fed. R. Civ. P. 12(b)(6) .................................................................................. 9, 25

**Introduction**

The defendants seek an order (i) compelling the named plaintiffs to arbitration and (ii) dismissing or alternatively staying this proceeding pending arbitration. Because all of the claims are subject to arbitration, dismissal of this case in full is warranted.

On or around April 29, 2019, plaintiff Blanton executed an arbitration agreement with a Domino's franchisee, Wilson Pizza Company, in Sullivan, Indiana. That arbitration agreement expressly covers claims against "franchisors" (i.e. the defendants) and defines "the Company", one of the contracting parties, as including "franchisors." Ex. A-1 (Blanton Arbitration Agreement) ¶ I. It broadly covers "all claims, disputes and controversies" against the franchisee and franchisor, including "past, current and future." *Id.* at ¶ II. The claims brought in this litigation are not carved out as excluded from binding arbitration. *Id.* at ¶ II. B. Plaintiff Piersing likewise executed an arbitration agreement with a Domino's franchisee, Carpe Diem Pizza, Inc., in Washington. That arbitration agreement broadly covers "any and all claims … arising out of or relating to [his] employment." Ex. A-2 (Piersing Arbitration Agreement) ¶ 2. Damages claims (like those brought by Piersing) covering unfair compensation and unfair business practices are expressly not carved out from his binding arbitration obligation. *Id.* at ¶ 3. Both agreements provide clear

1

and unmistakable evidence that the parties intended to delegate arbitrability questions to an arbitrator in the first instance.  Ex. A-1 at ¶ II(A)(5); Ex. A-2 at ¶ 4.

Both plaintiffs thus have a valid agreement that requires binding arbitration of any claims that their wages were unfairly suppressed.  The plaintiffs instead filed this purported class action, alleging that the defendants conspired with franchisees—including the employers with which they had the exact arbitration agreement covering wage issues—to "unfairly suppress[] employee wages" and restrict employment mobility.  Compl. ¶¶ 145, 157.  There is no legitimate question that these are the types of claims encompassed by the arbitration agreements.

The complaint alleges that the plaintiffs and the purported classes were underpaid and that wages along with other benefits and compensation would have been different but for the alleged conspiracy and agreement between the defendants and the franchisees *and* among the franchisees not to solicit or hire each other's employees.  The complaint's Sherman Act and Washington Consumer Protection Act (brought solely by Piersing on behalf of a "Washington Subclass") claims fit plainly within the terms of these broad arbitration agreements.  A straightforward application of the Federal Arbitration Act ("FAA") mandates individual arbitration of the plaintiffs' claims.

In the case of Piersing, Sixth Circuit precedent and federal law provide the defendants with the right to enforce arbitration under equitable estoppel and co-

2

conspirator agency theories.  Equitable estoppel provides that non-signatories can enforce arbitration agreements against signatories (Piersing) who (i) allege concerted misconduct between the non-signatory (the defendants) and signatory (the franchisees) and (ii) assert claims that are connected to the arbitration agreement. Because both circumstances are met—Piersing alleges a conspiracy among the defendants and franchisees, and he seeks to recover damages for his alleged suppressed wages that are derived from his employment—Piersing's claims against the defendants are subject to arbitration.  Compelling Piersing to arbitration is consistent with the fairness concerns underlying equitable estoppel and the Sixth Circuit's warning that plaintiffs should not be allowed to end-run around arbitration obligations. *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir. 1990).  The defendants likewise can compel arbitration under co-conspirator agency principles because, although defendants and the franchisees are not generally agents for each other, the complaint alleges that the defendants conspired with the signatory franchisee to engage in the precise conduct that is covered by the arbitration clause.  Unless the franchisee agreed to adhere to and use the alleged non-solicitation restriction to keep wages suppressed, there is no claim under the Sherman Act or any related state law.

The defendants file this motion because the plaintiffs should not be permitted to circumvent their arbitration obligations and bring a wage-related claim against them by selectively choosing which co-conspirators to name as defendants.  This

3

case plainly invokes wage and employment terms and therefore should be subject to the arbitration clause.  To protect their rights to arbitration and avoid any later argument of waiver, the defendants now move to compel arbitration.  To the extent any plaintiff or claim remains in this Court, the defendants expressly reserve all rights in connection with moving to compel arbitration at the appropriate time against potential later-named plaintiffs and the putative class, including both franchisee- and corporate-store employees that may be subject to arbitration.[1]

## Factual Background

### A.    Blanton's Arbitration Agreement.

Blanton entered into his arbitration agreement with Domino's franchisee Wilson Pizza Company on April 29, 2019. Ex. A-1.  Blanton's arbitration agreement is governed by the FAA (*Id.* ¶ I), and clearly delegates threshold questions of arbitrability to an arbitrator.  *Id.* at ¶ II. A(5) ("Any claim … relating to the scope, validity, or enforceability of this Arbitration Agreement" is subject to arbitration). The term "the Company" expressly includes both the franchisee and the franchisors, as contracting parties.  *Id.* ¶ I.

---

[1] The defendants anticipate that a significant portion of franchisee employees have entered into arbitration agreements that may vary by franchisee and/or by store in their specific terms, but that likely include class action waiver provisions. The defendants reserve all rights to raise such matters as and when appropriate in connection with any motion for class certification or any other aspect of this litigation.  Nearly 100% of the employees of company-owned locations have entered into arbitration agreements with class action waiver provisions.

4

Blanton's agreement plainly provides for "binding arbitration" of covered claims, which broadly encompasses "***all claims*** which may be brought in a court or before a government agency unless specifically excluded," and expressly covers "***past, current and future***" claims.  *Id.* at ¶ II.[2]  Paragraph III waives any multi-plaintiff litigation, requiring any claim to be "***arbitrated only on an individual basis and not on a class … basis***" and "***expressly waive[s] any right to arbitrate as a class representative***." *Id.* at ¶ III. A.  Any "right to a trial by jury of any individual, class … or other claim" is also waived.  *Id.* at ¶ V.  Paragraph IV provides for dismissal of this action as it states that if either party "pursues a covered claim against the other by any method other than the arbitration provision herein … the responding party is entitled to a dismissal, stay and/or injunctive relief."  *Id.* at ¶ IV.

## B.    Piersing's Arbitration Agreement.

Piersing entered into his arbitration agreement with Domino's franchisee Carpe Diem Pizza, Inc. on August 15, 2018.  *See* Ex. A-2.  Piersing's arbitration agreement is also governed by the FAA (*Id.* at ¶ 8) and delegates threshold questions of arbitrability to an arbitrator.  *Id. at* ¶ 4 (stating that AAA "will administer the arbitration and it will be conducted in accordance with" the AAA's rules).

Piersing's arbitration agreement plainly provides for "binding arbitration" of covered claims: "Employee and Company mutually promise, agree, and consent to

---

[2] All emphasis is added unless stated otherwise.

resolve any claim covered by this Agreement through binding arbitration, rather than through court litigation." *Id.* at ¶ 1. Paragraph 2 of the arbitration agreement defines and sets out the covered claims that broadly include: "***any and all claims***, disputes, or controversies ***arising out of or relating to Employee's employment*** with the Company." *Id.* at ¶ 2. Importantly, the arbitration agreement does not restrict its application to claims asserted against the franchisee.

Further, Paragraph 2 prohibits covered claims from being tried by a jury or subject to a class action: "For all covered claims, Employee and the Company expressly ***waive any right to a trial by jury***. ***No covered claims may be asserted as part of a multi-plaintiff, class or collective action***." *Id.* Paragraph 3 expressly defines the limited claims that are *not* covered to include only:

> a) [a]ny claim by Employee for worker's compensation or other related benefit plans, including unemployment compensation benefits; and b) [a]ny claim by either party for injunctive or declaratory relief arising from alleged inference [sic] with business, unfair compensation, unfair business practices, breach of the duty of loyalty, unauthorized disclosure of trade secrets or confidential information, or the breach of covenants between parties.

*Id.* at ¶ 3. Claims for ***damages*** (like those asserted by Piersing) are ***not*** carved out. Paragraph 5 provides that if one party to the agreement pursues a covered claim in any forum other than through arbitration, the other party is entitled, among other things, to a dismissal of the action. *Id.* at ¶ 5.

6

### C.   The Complaint's Allegations.

Blanton is currently employed as a pizza delivery driver by a franchisee of Domino's Pizza Franchising LLC, operating Domino's® branded store in Sullivan, Indiana.   First Amended Class Action Complaint (the "complaint") at ¶ 100. Piersing is a former pizza delivery driver who has worked for at least two franchisees of Domino's Pizza Franchising LLC, operating Domino's® branded stores in the State of Washington.   *Id.* at ¶¶ 105-110.   In or around mid-2018, Piersing was hired by Carpe Diem Pizza, Inc. to work in its University District store as a driver where he worked until December 2018.   *Id.* at ¶ 110.

The complaint alleges that the defendants engaged in anticompetitive conduct "by orchestrating an agreement to restrict competition between and among Domino's and Domino's franchisees, which ***unfairly*** suppressed employee wages." *Id.* at ¶ 145.   The Domino's franchisees allegedly "participated as co-conspirators" in this purported anticompetitive conduct.   *Id.* at ¶ 21.

The purported conspiracy allegedly included "concerted efforts, actions and undertakings among the Defendants and franchise owners with the intent, purpose and effect of artificially suppressing the compensation of Plaintiffs and Class Members" and "restraining employees' ability to secure better compensation, advancement, benefits, and working conditions."   *Id.* at ¶ 146; *id.* at ¶ 6 ("Domino's and Domino's franchisees … have together colluded to suppress the wages and

7

employment opportunities …").  The complaint alleges antitrust injury to plaintiffs based on their employment, including "reduced wages, reduced employment benefits, loss of professional growth opportunities, and worsened working conditions…" *Id.* at ¶ 112.  According to the complaint, plaintiffs have "received lower compensation from Domino's and Domino's franchise businesses than they otherwise would have received in the absence" of the alleged agreement between his employer, other Domino's franchisees and Domino's.  *Id.* at ¶¶ 12, 149.  The complaint brings claims, on behalf of the plaintiffs and a purported nationwide-wide class, for violations of the Sherman Act, 15 U.S.C. § 1, and on behalf of a purported Washington State subclass, pursuant to the Washington Consumer Protection Act, RCW 19.86.030.[3]

## Legal Standard

"The Sixth Circuit allows district courts to dismiss an action where all of the claims are arbitrable."  *Bishop v. Gosinger, Inc.*, 692 F. Supp. 2d 762, 767 (E.D. Mich. 2010); *see also Roe v. Nano Gas Techs., Inc.*, 2015 WL 1952283, *3 (E.D. Mich. Apr. 29, 2015).  Dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate when the dispute is covered by an applicable arbitration clause.  *See e.g.*, *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 2008 WL 2467979, at *1 (6th Cir. June

---

[3] The WCPA claim is brought solely by Piersing on behalf of all individuals employed at stores in the State of Washington during the relevant time.  Compl. ¶¶ 119, 155 – 162.

18, 2008) (affirming dismissal under Fed. R. Civ. P. 12(b)(1) based on an arbitration clause); *Multiband Corp. v. Block*, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012).  Alternatively, dismissal is warranted under Rule 12(b)(6).[4]

The FAA reflects "a liberal federal policy favoring arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same).  "The overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility*, 563 U.S. at 344.

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Bishop v. Gosinger, Inc.*, 692 F. Supp. 2d 762, 767 (E.D. Mich. 2010) (quoting 9 U.S.C. § 2).  Under Section 4 of the FAA, courts "shall" compel arbitration if the parties entered into an enforceable written

---

[4] As courts in this district have noted, "there is some confusion as to whether Rule 12(b)(6) . . . or Rule 12(b)(1) . . . is the proper vehicle to bring a motion to dismiss and compel arbitration. *Hall v. Pac. Sunwear Stores Corp.*, 2016 WL 1366413, at *3 (E.D. Mich. Apr. 6, 2016); *see also Powers Distrib. Co., Inc. v. Grenzebach Corp.*, 2016 WL 6611032, at *2–3 (E.D. Mich. Nov. 9, 2016). But "[t]he distinction between Rule 12(b)(1) and Rule 12(b)(6) is immaterial" here, *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 744-45 (W.D. Mich. 2008) and, in any event, the defendants have invoked both Rules out of an abundance of caution.  In the alternative, the defendants request that the Court stay the litigation.  *See infra* at Section V.

agreement to arbitrate claims that fall within the scope of the arbitration agreement. 9 U.S.C. § 4[5]; *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

"Parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Danley v. Encore Cap. Grp., Inc.*, 680 Fed. Appx. 394, 398 (6th Cir. 2017) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). There must be clear and unmistakable evidence that the parties intended to delegate arbitrability questions to an arbitrator. *Rent-A-Center*, 561 U.S at 70.

Where such clear and unmistakable evidence does not exist, the question of whether the parties agreed to arbitrate is to be decided by the court. *Vic Wertz Distrib. Co. v. Teamsters Local 1038, et al.*, 898 F.2d 1136, 1139 (6th Cir. 1990) (citation omitted); *see also Carey v. Uber Techs., Inc.*, 2017 WL 1133936, at *5 (N.D. Ohio Mar. 27, 2017) (citation omitted). A court reviewing a motion to compel arbitration must (1) determine whether the parties agreed to arbitrate, (2) determine

---

[5] Section 4 provides in relevant part: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4.

the scope of that agreement, and (3) consider whether Congress intended the issues in the suit to be nonarbitrable. *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003); *see also Javitch*, 315 F.3d at 624.

In determining whether to compel arbitration, the Supreme Court has further interpreted the FAA as establishing that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) ("rigorously enforce agreements to arbitrate"). "Any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-504 (6th Cir. 2007).

Further, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000). It is well-settled that the strong presumption in favor of arbitration applies equally to antitrust claims. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (holding that antitrust claims were arbitrable despite plaintiffs' argument that arbitration would deprive them of their right to recover as it would not be cost-effective); *Mitsubishi Motors Corp.*, 473 U.S. at 628-29; *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013).

11

## Argument

### I. The Arbitrator Should Decide All Questions of Arbitrability.

Any questions regarding the scope or enforceability of the plaintiffs' agreements should be submitted to arbitration in the first instance. Under controlling authority, Blanton's agreement plainly provides clear and unmistakable evidence that the parties intended to delegate arbitrability questions to an arbitrator. *Rent-A-Center*, 561 U.S at 70; *Danley*, 680 Fed. Appx. at 398. His agreement expressly states that "any claim … relating to the scope, validity, or enforceability of this Arbitration Agreement" is a covered claim subject to arbitration. Ex. A-1 ¶ II(A)(5).

With regards to Piersing (and Blanton alternatively), "at least six federal Circuit Courts hold that when a contract requires arbitration pursuant to AAA Rules—which expressly give the question of arbitrability to the arbitrator—'it clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which issues are subject to arbitration'" and "several district courts in the Sixth Circuit have followed this emerging line of authority." *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769 (E.D. Mich. 2010); *see also Morsey Constructors, LLC v. Burns and Roe Enters., Inc.*, 2008 WL 3833588, at *4 (W.D. Ky. Aug. 13, 2008) ("[W]hen parties agree to settle claims related to a contract according to the rules of the AAA, 'they provide a clear and unmistakable' delegation of scope-determining authority to an arbitrator.") (quoting *Bowden v. Delta Corp.*, 2006 WL

12

3412307, * at 7 (E.D. Ky. Nov. 27, 2006); *Book Depot P'ship v. Am. Book Co.*, 2005 WL 1513155, at *3 (E.D. Tenn. June 24, 2005).

Both arbitration agreements provide for application and accordance with the AAA rules, thereby clearly and unequivocally delegating all arbitrability questions to an arbitrator. *See* Ex. A-1 at ¶ III; Ex. A-2 at ¶ 4. Rule 7 (a) of the AAA Rules provides that the "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement, or the arbitrability of any claim or counterclaim." Ex. B (AAA Commercial Rules) at 13; *see also* Ex. C (AAA Employment Rules) at 12 (same). The Court thus should compel the plaintiffs to arbitration, including any opposition they might present related to this motion.

## II.    The Plaintiffs Must Arbitrate Their Claims Against the Defendants.

If the Court finds that it should decide the threshold questions of arbitrability, the Court should compel the plaintiffs to arbitrate their claims. Both arbitration agreements are enforceable under the FAA. A court must compel arbitration where (i) a valid arbitration agreement exists and (ii) the arbitration agreement encompasses the claims at issue. *Javitch*, 315 F.3d at 624. There is no doubt that both factors are met. First, it is indisputable that both plaintiffs entered into valid arbitration agreements with their franchisee-employers. *See* Exs. A-1, A-2.

13

Second, both arbitration agreements plainly encompass the complaint's employment related compensation-based claims for unfairly suppressing wages and restricting employment mobility under the Sherman Act and the Washington Consumer Protection Act. Blanton's arbitration agreement plainly provides for "binding arbitration" of covered claims, which broadly encompasses "all claims which may be brought in a court or before a government agency unless specifically excluded" including all that "arise out of the employment", and expressly covers "past, current and future" claims against "the Company." Ex. A-1 ¶ I, II. The term "the Company" expressly includes *both* the franchisee and the franchisors (*Id.* ¶ I), meaning the franchisor (defendants) are included as a contracting party and may enforce the arbitration agreement. In any event, the broad definition of "the Company" indicates that Blanton and Wilson Pizza Company intended for the defendants to be third party beneficiaries to the agreement empowering them to enforce the agreement. *See Vanerian v. Charles L. Pugh Co.*, 279 Mich. App. 431, 435 (2008). Piersing's arbitration agreement covers "any and all claims . . . arising out of or relating to [his] employment." Ex. A-2 ¶ 2.

The Sixth Circuit has held such language to be "far-reaching" and "extremely broad." *See e.g. Huffman v. Hilltop Cos.*, LLC, 747 F.3d 391, 395 (6th Cir. 2014) (the language "[a]ny Claim arising out of or relating to this Agreement" is "far-reaching" and "broad") (internal citations and quotation marks omitted); *Cincinnati*

14

*Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (stating that clause requiring arbitration of any dispute arising out of an agreement is "extremely broad").[6]  The complaint's claims relate to wages and employment matters, and thus rest comfortably within the broad scope of both Blanton and Piersing's arbitration agreements.  Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## III.     The Defendants Can Enforce Piersing's Arbitration Agreement.

Sixth Circuit precedent provides the defendants with the right to enforce Piersing's arbitration agreement.[7]  "[A] party does not have to personally sign an agreement to be bound, but may stand in the shoes of the entity that signed the agreement."  *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 382-83 (E.D. Ky. 2006).  A party's status as a non-signatory to an arbitration agreement "is not

---

[6] Courts in Michigan, Indiana and Washington have held similarly.  *See Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146, 163 (2007) (the language "any dispute or controversy arising out of or relating to" the agreement is a broad arbitration clause and vests the arbitrator with the authority to hear the claims, even if they involve non-signatories to the agreement); *Richardson v. Bart's Car Store, Inc.*, 2014 WL 7184433, at *2 (S.D. Ind. Dec. 15, 2014) (noting that the Seventh Circuit has repeatedly construed the phrases "arising out of" and "'relating to' in arbitration agreements very broadly")(citation omitted); *OwnZones Media Network, Inc. v. Sys. in Motion, LLC*, 2014 WL 4626302, at *1, *7 (W.D. Wash. Sept. 15, 2014) (agreement where parties agreed to arbitrate "any and all disputes, controversy or claims related to or arising in connection with this Agreement" was broad and, because "it cannot be said with positive assurance that the parties' broad arbitration clause does not cover the instant dispute, [the] claims must be arbitrated") (citations omitted).

[7] Although the defendants are expressly parties to Blanton's arbitration agreement as explained above, the defendants fully incorporate these arguments with regards to Blanton in the alternative.

dispositive on the question of whether plaintiff is bound by the arbitration provision of [the] Agreement." *Id.* at 382.   The Sixth Circuit recognizes five theories that allow non-signatories to invoke arbitration agreements: (i) incorporation by reference, (ii) assumption, (iii) agency, (iv) veil-piercing/alter ego, and (v) equitable estoppel.  *Javitch*, 315 F.3d at 629.[8]

Underpinning this rationale, is the understanding that if a signatory to an arbitration agreement "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint . . . the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (citation omitted).   The complaint repeatedly alleges that both the defendants and the franchisees were participants in the conspiracy to suppress wages.   The plaintiffs thus cannot circumvent their arbitration agreements by simply naming only some of the alleged conspirators.

### A.   Equitable estoppel requires arbitration of all claims asserted by Piersing.

The defendants can invoke the arbitration clause, as multiple courts in this Circuit have held in comparable circumstances.  Equitable estoppel provides that "claims against non-signatories to an arbitration agreement can still be subject to

---

[8] Washington law also recognizes that non-signatories can enforce arbitration agreements and applies similar standards to Michigan law. *See e.g.*, *McClure v. Davis Wright Tremaine*, 77 Wash. App. 312, 315 (1995).  Piersing should be compelled to arbitrate under either states' law.

arbitration." *Cole v. FES*, 2010 WL 3584270, at *3 (E.D. Mich. Sept. 13, 2010).  In the Sixth Circuit, equitable estoppel may apply in two circumstances: (1) when the signatory relies on the terms of the written agreement containing the arbitration clause in asserting its claim against a non-signatory, and (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.  *In re Auto. Parts Antitrust Litig*., 2017 WL 3579753, at *3-4 (E.D. Mich. Apr. 18, 2017).  While courts within the Sixth Circuit slightly differ on whether one or both circumstances must be present for equitable estoppel to apply, it is of no consequence here as both circumstances are met.

First, Piersing is plainly relying on the subject of his arbitration agreement with a Domino's franchisee in bringing his claims.  Both of his claims directly stem from his employment with Domino's-brand stores, and he claims that he suffered damages in the form of unfairly suppressed wages and restrained employment mobility.  The complaint alleges that his claim arose out of the Carpe Diem Pizza, Inc. franchise because he could not be simultaneously employed there and with his current franchise employer who allegedly enforced the non-solicitation clause contained in the Domino's franchise agreement.  Compl. ¶¶ 108-110.  The complaint's entire theory of liability is that franchisee's and the defendants conspired to suppress his wages, and then hid the conspiracy from him and the

17

putative class members. *Id.* ¶¶ 12-13 (the agreement between defendants and franchisees has restricted employee mobility, resulting in lowered salaries and benefits to employees); *id.* at ¶ 21 (Domino's franchisees were co-conspirators and performed acts and made statements in furtherance of the alleged violations); *id.* at ¶ 128 (franchisees and defendants did not disclose the "no-poach and no-hire conspiracy"); *id.* at ¶¶ 145-46 (franchisees and defendants "unfairly suppressed employee wages", "artificially suppress[ed] the compensation of [Piersing]" and "restrain[ed his] ability to secure better compensation, advancement, benefits, and working conditions"). While Piersing chose not to name Carpe Diem Pizza, Inc. (his franchisee) as a defendant, there is no question he refers to his franchisee as a co-conspirator and has put the terms of his employment (the subject of his arbitration clause) squarely at issue.

Further demonstrating Piersing's reliance on his employment in bringing these claims, his purported damages all derive from his employment with the Domino's franchisee. Piersing's arbitration agreement explicitly states that "any and all claims" "arising out of or relating to [his] employment" are covered by the agreement. Had he brought his claims against the franchisee, he would have been required to arbitrate rather than litigate his claims in federal court. *See* Ex. A-2 ¶ 1. Attempts to circumvent the terms of arbitration agreement through artful pleading are consistently rejected to avoid "nullifying" arbitration. This concern is precisely

18

what has motivated the Sixth Circuit to rule that non-signatories can invoke arbitration clauses in these types of circumstances.  As the Sixth Circuit ruled:

> We agree with the district court that if appellant 'can avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint . . . the effect of the rule requiring arbitration would, in effect, be nullified.'

*Arnold*, 920 F.2d at 1281 (internal citations omitted); *see also Terwilliger v. Greyhound Lines, Inc*., 882 F.2d 1033, 1038 (6th Cir. 1989) (plaintiffs cannot avoid arbitration by "artfully pleading" their claims; otherwise, the strong policy favoring arbitration would be "eviscerate[d]").

Second, the doctrine  equitable estoppel likewise applies because the complaint repeatedly alleges interdependent and concerted misconduct between Piersing's signatory employer and the non-signatory defendants.  In other words, the complaint alleges that the defendants and franchisees acted in a single conspiracy not to solicit or hire each other's employees and to suppress wages.  *E.g.*, Compl. ¶¶ 145-46, 157.  As courts within the Sixth Circuit have held, "arbitration is appropriate where the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories of the contract."  *PFS Investments, Inc. v. Imhoff*, 2011 WL 1135538, at *8 (E.D. Mich. Mar. 25, 2011) (internal citation omitted); *see also In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013)

19

(applying equitable estoppel to price-fixing conspiracy claims under the Sherman Act); *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (applying equitable estoppel to a civil conspiracy claim). Importantly, the *PFS Investments* Court found that equitable estoppel is appropriate where the "interdependent and concerted misconduct" element alone is met.[9]  *See PSF Investments, Inc.,* 2011 WL 1135538, at *8.  This is easily satisfied, as the alleged conspiratorial conduct between the franchisees (signatories) and the defendants (non-signatories) is at the core of the complaint.

## B.    As alleged co-conspirators the defendants can enforce Piersing's arbitration agreement.

The defendants can also invoke Piersing's arbitration agreement because the complaint alleges them to be co-conspirators.  The complaint's theory of liability is that the franchisees (signatories) conspired not only with the defendants but also with each other in agreeing to enforce the non-solicitation provision. Applying Sixth Circuit law, courts in this Circuit have held that a non-signatory can enforce an arbitration agreement "where a party alleges that a non-signatory engaged in a conspiracy with a signatory."  *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 383-84 (E.D. Ky. 2006)); *see also James T. Scatuorchio Racing Stable, LLC v. Walmac*

---

[9] Some courts applying Michigan law have treated the two grounds for applying equitable estoppel as independent, such that allegations of concerted misconduct alone suffice to require arbitration. *See e.g.*, *Tobel v. AXA Equitable Live Ins.*, 2012 WL 555801, at *11 (Mich. Ct. App. Feb. 21, 2012); *Thomas v. Right Choice Staffing Grp.*, 2015 WL 4078173, at *6 (E.D. Mich. July 6, 2015).

20

*Stud Mgmt., LLC*, 2014 WL 1281475, at *7 (E.D. Ky. Mar. 27, 2014) (non-signatory allowed to enforce arbitration agreement where it was clear from the "pleadings, discovery responses, and other filings, … that the plaintiffs' theories of liability … are based on the alleged interrelationship, agency and the co-conspirator relationship of" the parties, who were not all signatories).   Other courts have accepted this position as well.  *Am. Reliable Ins. Co. v. Arrington*, 269 F. Supp. 2d 758, 762 (S.D. Miss. 2003) (a non-signatory may compel arbitration where plaintiff alleges conspiracy with signatory); *Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1529 n.11 (M.D. Ala. 1997) (allegation of a civil conspiracy "is a kind of partnership, in which each member becomes the agent of the other",  allowing a non-signatory to compel arbitration under laws of agency); *Elder v. BMO Harris Bank*, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014) ("[I]t is a well-established principle that co-conspirators are agents of one another.").  The same principles apply here, even apart from the separate grounds under equitable estoppel.

To be clear, the defendants are not suggesting that the defendants and Domino's franchisees are, in fact, "agents" of each other in the fiduciary or principal and agent sense.  They are not.  The franchise agreement expressly disclaims any agency relationship.  The point here is what the complaint alleges as the theory of liability and what Piersing agreed to in his arbitration agreement.  There is no question that the complaint alleges that the defendants and the Domino's franchisees

21

conspired in restraint of trade.  Therefore, as alleged co-conspirators, the defendants and franchisees are, at least according to the complaint, agents of one another in relation to the purported conspiracy.  Having invoked the Sherman Act and other claims on this theory of conspiracy, Piersing cannot now sue some co-conspirators but not others in an attempt to circumvent his arbitration agreement.

In the event the Court finds that the alleged collusion and conspiracy is, by itself, not enough to compel arbitration, the nature of Piersing's claims also require that he be bound to his arbitration agreement.  As explained above, Piersing's claims directly stem from his employment with Domino's-brand stores, and he claims that he suffered damages in the form of lost wages and restrained employment mobility. Piersing specifically alleges that his claim arose out of the Carpe Diem Pizza, Inc. franchise, because he could not be employed simultaneously at two franchises because of the non-solicitation clause previously contained in the Domino's franchise agreement.  Compl. ¶¶ 108-110.  Under these alleged facts, "given the significant relationship between the claims levied against the defendants, as agents, co-conspirators … allowing [the non-signatories] to enforce the arbitration provision is appropriate." *James T. Scatuorchio Racing Stable*, 2014 WL 1281475, at *8.

## IV.    The Plaintiffs Cannot Bring Their Claims On A Class-Wide Basis.

The plaintiffs should not be allowed to arbitrate (or litigate) their claims on a class-wide basis because they expressly agreed to arbitrate on an individual basis,

and waived class action litigation and the right to a trial by jury. *See supra* at 5-6. The Supreme Court definitively established that express class action waivers, like present here, are valid and enforceable. "No contrary congressional command" in the federal antitrust laws "requires us to reject the wavier of class arbitration" in the parties' contract. *Am. Express*, 570 U.S. at 233; *AT&T Mobility*, 563 U.S. at 341-47 (upholding enforceability of class action waiver); *Stolt-Nielsen S.A., et al v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (holding that a party may not be compelled to submit to class arbitration absent an agreement to do so). The plaintiffs therefore should not be allowed to arbitrate their claims on a class-wide basis or bring these claims in federal court on behalf of purported classes.

## V.     The Proceeding Should Be Stayed In the Alternative to Dismissal.

For the foregoing reasons, the defendants submit that dismissal is warranted because all claims are subject to binding arbitration. In the alternative, the claims should be stayed pursuant to Section 3 of the FAA. *Bishop*, 692 F. Supp. 2d at 767 (citing 9 U.S.C. § 3). A stay is appropriate even where some claims are subject to arbitration but others are not, "where the remaining claims depend upon the same facts and are inherently inseparable from arbitrable claims, arbitration may resolve issues in the lawsuit, or where staying litigation would promote the federal policy in favor of arbitration." *Harajli v. Bank of Am.*, 2014 WL 4965912, at *2 (E.D. Mich. Oct. 2, 2014). This standard is plainly met here.

23

## Conclusion

For the foregoing reasons, the defendants respectfully request that the Court dismiss the complaint in its entirety because the plaintiffs are subject to binding arbitration, or in the alternative, stay the proceeding pending arbitration.

Dated:  July 18, 2019

J. Robert Robertson
Ill. Bar #6204009
Norman M. Leon
Ill. Bar #6239480
John J. Hamill
Ill. Bar #6217530
Michael S. Pullos
Ill. Bar #6293587
Mary M.M. Shepro
Ill. Bar # 6321508
DLA Piper LLP (US)
444 West Lake Street Suite 900
Chicago, IL 60606-0089
Telephone:   312.368.4060
Facsimile:   312.251.5710
Robby.robertson@dlapiper.com
Norman.leon@dlapiper.com
John.hamill@dlapiper.com
Michael.pullos@dlapiper.com
Mary.shepro@dlapiper.com

By: */s/ J. Robert Robertson*

Edward J. Hood (P42953)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
T: 313-965-8591
ehood@clarkhill.com

David H. Bamberger
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: 202-799-4500
Facsimile: 202-799-5000
David.bamberger@dlapiper.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, J. Robert Robertson, do hereby certify that on this 18th day of July 2019, I caused a true and correct copy of the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE PROCEEDING** to be filed with the Clerk of the Court through the ECF system, which gives notice to all parties of record.

*/s/ J. Robert Robertson*
J. Robert Robertson

25