# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HARLEY BLANTON and DEREK PIERSING, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>DOMINO'S PIZZA FRANCHISING LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA MASTER ISSUER LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA LLC, a Michigan Limited Liability Company; and DOMINO'S PIZZA, INC., a Delaware Corporation.<br><br>        Defendants. | Case No. 2:18-cv-13207<br><br>Judge Victoria A. Roberts |

## PLAINTIFFS' OPPOSITION
## TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

1829773.1

## **STATEMENT OF THE ISSUES**

1. Did Plaintiffs Derek Piersing and Harley Blanton clearly and unmistakably agree to delegate to an arbitrator the resolution of any disputes with Defendants (who are not signatories to Plaintiffs' respective arbitration agreements) regarding whether Defendants have a right to compel arbitration?

2. Have Defendants met their high burden to show that, as non-signatories without any employment or contractual relationship to Plaintiffs, they may compel Plaintiffs to arbitrate their antitrust claims against their will under a theory of equitable estoppel?

3. Have Defendants demonstrated that they are intended third-party beneficiaries of Blanton's arbitration agreement under Indiana law?

4. Should the Court exercise its authority under Federal Rule of Civil Procedure 23(d) to bar Defendants from compelling Blanton to arbitrate because he was induced to sign the arbitration agreement with assurances it would not affect this already-pending litigation?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019)

*AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)

*Reed-Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594 (6th Cir. 2013)

*AlixPartners, LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016)

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003)

*Smith Barney, Inc. v. Sarver*, 108 F.3d 92 (6th Cir. 1987)

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013)

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013)

*In re Wholesale Grocery Prods. Litig.*, 707 F.3d 917 (8th Cir. 2013)

*Bd. of Trs. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335 (11th Cir. 2010)

*Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851(N.D. Cal. 2015)

*Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949 (N.D. Cal. 2012)

*Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-172-DAD-JLT, 2019 WL 2339783 (C.D. Cal. June 3, 2019)

*E&E Co., Ltd. v. Light in the Box Limited*, No. 15-cv-69-EMC, 2015 WL 5915432 (N.D. Cal. Oct. 9, 2015)

*Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281 (Ind. App. Ct. 2004)

*Qpro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492 (S.D. Tex. 2011)

# **TABLE OF CONTENTS**

Page

STATEMENT OF THE ISSUES.................................................................i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ii

TABLE OF AUTHORITIES ................................................................iv

BRIEF IN OPPOSITION...................................................................1

I.      INTRODUCTION .................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................2

        A.      Domino's Ensures the Independence of Its Franchisees.....................2

        B.      Blanton's Arbitration Agreement with Wilson Pizza .........................4

        C.      Piersing's Arbitration Agreement with Carpe Diem...........................4

III.    LEGAL STANDARD ...............................................................5

IV.     ARGUMENT......................................................................6

        A.      Plaintiffs Did Not Agree to Arbitrate with Domino's.........................6

        B.      Absent a Clear and Unmistakable Agreement, Gateway
                Questions Are Decided by a Judge, Not an Arbitrator ......................8

                1.      Incorporation of AAA Rules Is Not a Clear and
                        Unmistakable Agreement to Arbitrate ......................................9

                2.      There Must Be a Clear and Unmistakable Agreement to
                        Arbitrate Gateway Issues with *Non-Signatories*.....................12

        C.      Equitable Estoppel Does Not Permit Domino's to Arbitrate
                Plaintiffs' Antitrust Claims .................................................14

                1.      Plaintiffs Are Not Seeking Direct or Indirect Benefits
                        Under Their Arbitration Agreements.......................................15

                2.      Defendants' Alleged Misconduct Is Not Intertwined with
                        the Terms of Any Written Agreements with Plaintiffs............19

        D.      The Court Should Invalidate Blanton's Agreement...........................23

        E.      Alternatively, Piersing and Blanton Should Be Permitted to
                Narrow Their Claims......................................................25

V.      CONCLUSION....................................................................25

# TABLE OF AUTHORITIES

## Cases

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012) ...............................................................10

*Albert M. Higley Co. v. N/S Corp.*,
445 F.3d 861 (6th Cir. 2006) ..................................................................5

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016) ................................................................10

*Am. Reliable Ins. Co. v. Arrington*,
269 F. Supp. 2d 758 (S.D. Miss. 2003) ......................................... 21, 22

*Arnold v. Arnold Corp.*,
920 F.2d 1269 (6th Cir. 1990) ..............................................................21

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)................................................................................6

*AT&T Techs. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)................................................................. 5, 8, 13

*Balasanyan v. Nordstrom, Inc.*,
No. 11-cv-2609-JM-WMC, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012)..............24

*Bd. of Trs. v. Citigroup Global Mkts., Inc.*,
622 F.3d 1335 (11th Cir. 2010) ...........................................................13

*Billingsley v. Citi Trends, Inc.*,
560 F. App'x 914 (11th Cir. 2014) ......................................................24

*Bishop v. Gosiger, Inc.*,
692 F. Supp. 2d 762 (E.D. Mich. 2010) ..............................................12

*Book Depot P'ship v. Am. Book Co.*,
No. 3:05-cv-163, 2005 WL 1513155 (E.D. Tenn. June 24, 2005) .......................12

*Calzadillas v. Wonderful Co., LLC*,
No. 1:19-cv-172-DAD-JLT, 2019 WL 2339783 (C.D. Cal. June 3, 2019)...........10

*Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am.*,
440 F.3d 809 (6th Cir. 2006) ...........................................................9, 11

*Cole v. FES*,
No. 10-12041, 2010 WL 3584270 (E.D. Mich. Sept. 13, 2010) ..........................21

*Daimler Chrysler Corp. v. Franklin*,
  814 N.E.2d 281 (Ind. App. Ct. 2004) ................................................................7

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*,
  448 F.3d 918 (6th Cir. 2004) .........................................................................6

*Danley v. Encore Capital Grp., Inc.*,
  680 F. App'x 394 (6th Cir. 2017) ...............................................................9, 11

*E&E Co., Ltd. v. Light in the Box Ltd.*,
  No. 15-cv-69-EMC, 2015 WL 5915432 (N.D. Cal. Oct. 9, 2015) ................ 13, 14

*Elder v. BMO Harris Bank*,
  No. 13-3043, 2014 WL 1429334 (D. Md. Apr. 11, 2014) ...................................22

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018).................................................................................6

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)...................................................................... 5, 8, 9, 13

*Ford v. Trendwest Resorts, Inc.*,
  146 Wash. 2d 146 (2002)...........................................................................17

*Franklin Templeton Bank & Tr. v. Butler*,
  No. 2:15-cv-435-JNP-EJF, 2016 WL 3129141 (D. Utah June 2, 2016) ...............16

*Galilea, LLC v. AGCS Marine Ins. Co.*,
  879 F.3d 1052 (9th Cir. 2018) ....................................................................12

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981).....................................................................................24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)..................................................................................9

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2017 WL 3579753 (E.D. Mich. Apr. 18, 2017).............. 19, 20

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) .........................................................24

*In re Humana Inc. Managed Care Litig.*,
  285 F.3d 971 (11th Cir. 2002) ....................................................................18

*In re Titanium Dioxide Antitrust Litig.*,
  962 F. Supp. 2d 840 (D. Md. 2013)..............................................................20

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  707 F.3d 917 (8th Cir. 2013) .................................................................. 17, 20

*James T. Scatuorchio Racing Stable, LLC. v. Walmac Stud Mgmt., LLC*,
  No. 5:11-374-DCR, 2014 WL 1281475 (E.D. Ky. Mar. 27, 2014) .....................22

*Javitch v. First Union Sec., Inc.*,
  315 F.3d 619 (6th Cir. 2003) .............................................................. 6, 15, 17, 18

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ........................................................................8, 13

*Kruse v. AFLAC Int'l, Inc.*,
  458 F. Supp. 2d 375 (E.D. Ky. 2006) ........................................................... 21, 22

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ................................................................................. passim

*Madera W. Condominium Ass'n v. Marx/Okubo*,
  175 Wash. App. 1032 (2013) ..........................................................................16

*McClure v. Davis Wright Tremaine*,
  77 Wash. App. 312 (1995) ...............................................................................19

*Morsey Constructors, LLC v. Burns & Roe Enters., Inc.*,
  No. 5:08-cv-23-R, 2008 WL 3833588 (W.D. Ky. Aug. 13, 2008) .....................12

*Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*,
  460 U.S. 1 (1983) .............................................................................................15

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) .............................................................................17

*Nitsch v. DreamWorks Animation SKG Inc.*,
  100 F. Supp. 3d 851 (N.D. Cal. 2015) ........................................................ passim

*Ontiveros v. Safelite Fulfillment, Inc.*,
  No. CV 15-7118-DMG (RAOx), 2017 WL 6043078
  (C.D. Cal. Oct. 16, 2017) ...............................................................................24

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ...........................................................................12

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) .........................................................................................18

*Perkins v. Mem. Hosp. of S. Bend*,
  121 N.E.3d 1089 (Ind. App. Ct. 2019) ...............................................................17

*PFS Invs., Inc. v. Imhoff*,
  No. 11-10142, 2011 WL 1135538 (E.D. Mich. Mar. 25, 2011)............................20

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
  259 F. Supp. 2d 531 (N.D. Tex. 2003) ...................................................20

*Qpro Inc. v. RTD Quality Servs. USA, Inc.*,
  761 F. Supp. 2d 492 (S.D. Tex. 2011) .......................................... 13, 14

*R.E. v. Pac. Fertility Ctr.*,
  No. 18-cv-1586-JSC, 2019 WL 1331044 (N.D. Cal. Mar. 25, 2019) ..................15

*Rahmany v. T-Mobile USA Inc.*,
  717 F. App'x 752 (9th Cir. 2018) .........................................................17

*Reed-Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*,
  734 F.3d 594 (6th Cir. 2013) ...................................................... 5, 11, 13

*Roberson v. Money Tree of Ala., Inc.*,
  954 F. Supp. 1519 (M.D. Ala. 1997) ...................................................21

*Smith Barney, Inc. v. Sarver*,
  108 F.3d 92 (6th Cir. 1987) .................................................................10

*Smith v. Astrue*,
  639 F. Supp. 2d 836 (W.D. Mich. 2009) .............................................12

*Soto v. Am. Honda Motor Co.*,
  946 F. Supp. 2d 949 (N.D. Cal. 2012) .......................................... 13, 14

*SPBR Holdings, Inc. v. KWAL-Howells, Inc.*,
  No. 13-cv-543-W-FJG, 2013 WL 6795923 (D. Colo. Dec. 23, 2013)..................10

*Terwilliger v. Greyhound Lines, Inc.*,
  882 F.2d 1033 (6th Cir. 1989) .............................................................23

*Thomas v. Right Choice Staffing Grp.*,
  No. 15-10055, 2015 WL 4078173 (E.D. Mich. July 6, 2015).............................21

*Tobel v. AXA Equitable Live Ins.*,
  No. 298129, 2012 WL 555801 (Mich. Ct. App. Feb. 21, 2012) ..........................21

*Tompkins v. 23andMe, Inc.*,
  No. 5:13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014),
  *aff'd on other grounds*, 840 F.3d 1016 (9th Cir. 2016) .........................................11

*Townsend v. Quadrant Corp.*,
  268 P.3d 917 (Wash. 2012).................................................................16

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009)..............................................................................10

*Vanerian v. Charles L. Pugh Co.*,
  279 Mich. App. 431 (2008)......................................................................................8

*Vibo Corp., Inc. v. Conway*,
  594 F. Supp. 2d 758 (W.D. Ky. 2009)...................................................................6

*Williams v. Orentlicher*,
  939 N.E.2d 663 (Ind. App. Ct. 2010) .................................................................16

*Williams v. Securitas Sec. Servs. USA, Inc.*,
  No. 10-cv-7181 2011 WL 2713741 (E.D. Pa. July 13, 2011) .............................24

**Rules**

Fed. R. Civ. P. 23(d) ............................................................................................23

**Treatises**

Restatement (Second) of Conflict of Laws
  § 188 (1971) ...........................................................................................................6

**BRIEF IN OPPOSITION**

## I.   INTRODUCTION

Domino's—a third party—has no right to compel arbitration of Plaintiffs
Harley Blanton and Derek Piersing's antitrust claims.  Domino's did not sign
arbitration agreements with Plaintiffs, nor did it have an employment relationship
with them.  Rather, Plaintiffs worked for independent franchisees with whom they
signed arbitration agreements: Blanton worked for Wilson Pizza Company ("Wilson
Pizza"), and Piersing worked for Carpe Diem Pizza, Inc. ("Carpe Diem").

Domino's attempts to piggyback off those agreements.  Whether Domino's, a
non-signatory third-party, has a right to compel arbitration under those agreements
is a "gateway" question that this Court must decide absent "clear and unmistakable"
evidence Plaintiffs agreed to have an arbitrator do so.  Neither Plaintiffs so agreed.
Blanton only agreed to arbitrate disputes with Wilson Pizza (not Domino's) about
unrelated gateway questions.  In contrast, Piersing did not agree to delegate *any*
gateway questions to the arbitrator.  Under Supreme Court and Sixth Circuit
precedent, a delegation agreement may not be inferred simply because Piersing
agreed to abide by American Arbitration Association rules.  Arbitration agreements
are enforced according to their terms.

Domino's argues that it is entitled to arbitrate under a theory of equitable
estoppel, but this case fails to meet the criteria for equitable estoppel.  A non-

1

signatory may only invoke equitable estoppel when a plaintiff seeks a direct or indirect benefit under an agreement that also contains an arbitration provision.  Not so here.  Plaintiffs' claims arise under federal and state antitrust laws, not the terms of their standalone arbitration agreements, which were not even employment contracts.

Although Domino's claims it may enforce the arbitration agreements because the complaint alleges a conspiracy, conspiracy alone is an insufficient basis for equitable estoppel.  The alleged conspiracy must be intertwined with the terms of the arbitration agreement.  Here, the antitrust claims are not intertwined with the arbitration agreements Domino's seeks to enforce.

The Court should deny Domino's motion in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Domino's Ensures the Independence of Its Franchisees

Domino's ensures that its franchisees operate independently through its agreements with franchisees, statements to the public, and statements to employees.  First, Domino's and its franchisees agree in writing they are not in a fiduciary or principal-agent relationship, but rather independent contractors.  FAC ¶ 60.  Indeed, franchisees agree ***they have no authority to act for or on behalf of Domino's, or to contractually bind Domino's to any agreement.***  *Id*.  *See also* Dkt. 26-2 at 41, ¶

22.8.  Indeed, Domino's highlighted this provision in its motion to dismiss.  Dkt. 26 at 5.

Second, this independence is broadcast to the general public.  Franchisees are contractually obligated to exhibit in their stores and on delivery vehicles "signs of sufficient prominence and wording as [Domino's] may prescribe from time to time so as to advise the public" that the store is owned and operated by a franchisee, not Domino's.  FAC ¶ 55.  Domino's website states that "[m]ost Domino's stores are owned and operated by independent franchisees rather than Domino's Pizza, LLC.  Each franchisee is a separate and distinct company from Domino's Pizza LLC." *Id.* ¶ 56.

Third, Domino's ensures that franchisees operate independently specifically in the employment context.  The franchise agreement ***disavows*** Domino's rights with respect to employees of franchisees: "neither we nor our affiliates have any relationship with your employees and have no rights, duties, or responsibilities with regard to their employment by you."  Dkt. 26-2 at 41 ¶ 22.8.  The franchise agreement also specifies that each franchisee is "solely responsible for recruiting, hiring, training, scheduling for work, supervising, and paying the persons who work in the Store and those persons shall be [the franchisee's] employees, and not [Domino's] agents or employees."  FAC ¶ 57.  Domino's Franchise Disclosure Document informs franchisees that they are "solely responsible for making hiring

and other employment decisions" in their stores.  *Id.* ¶ 58.  The "Careers" section of its website contains similar disclaimers.  *Id.* ¶ 59.  It is undisputed that Domino's disavows an employment relationship with the franchisees' workers.

### B.     Blanton's Arbitration Agreement with Wilson Pizza

Blanton filed this lawsuit on October 15, 2018, alleging a Sherman Act claim arising from his employment at a Domino's franchisee-owned restaurant in Port Orange, Florida.  Dkt. 1 ¶ 14.  Later, and after the parties briefed the motion to dismiss, Blanton sought employment and was hired as a delivery driver and in-store employee by Wilson Pizza, a franchisee in Sullivan, Indiana.  FAC ¶ 100.  Wilson Pizza required Blanton to sign an arbitration agreement.  Blanton Decl. ¶ 2.  It specifically told Blanton the agreement would not affect this case.  *Id.* ¶ 4.

### C.     Piersing's Arbitration Agreement with Carpe Diem

Piersing worked for a Domino's franchisee-owned restaurant, Noble Food Group, Inc. ("NFG"), for approximately four years without signing an arbitration agreement.  FAC ¶¶ 105-109.  In mid-2018, Piersing applied to work simultaneously for another franchisee, Carpe Diem Pizza, Inc. ("Carpe Diem").  *Id.* ¶ 108.  NFG terminated Piersing when it learned about his application to Carpe Diem, explaining in a text message: "For you to be able to work at the other dominos, I have to release you.  That is the only way they can hire or interview you.  Otherwise it is a breach of dominos franchise agreement . . . ."  *Id.* ¶ 109.

## III.   <u>LEGAL STANDARD</u>

"Arbitration under the Federal Arbitration Act is a matter of consent, not coercion." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006).[1] "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Further, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Such "gateway" questions are "undeniably an issue for judicial determination" unless "the parties clearly and unmistakably provide otherwise . . . ." *AT&T Techs.*, 475 U.S. at 649; *First Options*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.").  An agreement that is "silent or ambiguous as to whether an arbitrator should determine [] arbitrability" cannot "wrest that decision from the courts." *Reed-Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013).

If the Court does not find a clear and unmistakable agreement to arbitrate a particular "gateway" issue, then the Court must decide that issue. *Javich v. First*

---

[1]  Internal citations and quotations have been removed from all citations.

*Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Whether a non-signatory has a right to compel arbitration is a question of state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Piersing's and Blanton's arbitration agreements are subject to Washington and Indiana law respectively, because the agreements were formed there, their subject matter was work performed there, and the contracting parties were citizens or companies of those states.[2]

## IV.   ARGUMENT

### A.   Plaintiffs Did Not Agree to Arbitrate with Domino's

Piersing. As the Supreme Court recently declared, "[t]he FAA requires courts to 'enforce arbitration agreements according to their terms.'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)). The plain terms of Piersing's arbitration agreement show that the agreement was only between Piersing and Carpe Diem. Dkt. 61-4 at 1 ("This Mutual Agreement to Arbitrate Claims ('Agreement') is entered into between the Team Member ('Employee') and Carpe Diem Pizza, Inc. ('Company').").

This plain language gives no basis to infer that Piersing consented to arbitrate any issues with Domino's, a non-signatory not referenced in the agreement. As the

---

[2] *See DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2004) (federal choice of law rules generally look to Restatement); Restatement (Second) of Conflict of Laws § 188 (1971) (relevant factors include place of contracting, place of performance, location of subject matter, and citizenship of parties); *Vibo Corp., Inc. v. Conway*, 594 F. Supp. 2d 758, 780 n.21 (W.D. Ky. 2009) (federal choice of law rules apply in non-diversity cases).

Supreme Court recognized, "[c]onsent is essential under the FAA because arbitrators wield only the authority they are given" by the parties. *Lamps Plus*, 139 S. Ct. at 1416. Here, the plain language of the contract shows there was no consent, and courts "refus[e] to infer consent when it comes to . . . fundamental arbitration questions." *Id.* Because Piersing did not agree to arbitrate with Domino's, he cannot now be forced to do so.

Blanton. Domino's argues that it is a third-party beneficiary to Blanton's arbitration agreement with Wilson Pizza because Wilson Pizza defined the term "Company" to "include[] its . . . franchisors." Dkt. 61-3 at 1. But Domino's forbids its franchisees from entering into agreements on its behalf, FAC ¶ 60, so Wilson Pizza did not have the authority to form an agreement on Domino's behalf. Dkt. 61-3 at 1 (agreement covers "all claims . . . the Company may have against the Team Member"). In any case, the oblique reference to Wilson Pizza's "franchisors" does not give Domino's third-party status under Indiana law. *See Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 284-86 (Ind. App. Ct. 2004) (auto manufacturer not third-party beneficiary even where agreement between dealer and consumer explicitly covered "any resulting transaction or relationship (including such relationship with third parties who do not sign this contract)"). Domino's does not cite any Indiana law, and instead relies on a Michigan case, *Vanerian v. Charles L. Pugh Co.*, 279 Mich. App. 431, 435 (2008). The *Vanerian* court merely held that a

homeowner was the third-party beneficiary of a contract between her insurer and a contractor to replace her basement flooring. *Id*. at 432-35. In contrast, here, Domino's had nothing to do with Blanton's agreement.

### B.     Absent a Clear and Unmistakable Agreement, Gateway Questions Are Decided by a Judge, Not an Arbitrator

Domino's nonetheless seeks to compel arbitration with Piersing and Blanton, despite not signing any agreement with them and despite disclaiming any rights as to its franchisees' employees. Domino's concedes that it must prove by "clear and unmistakable evidence" that Plaintiffs agreed to arbitrate gateway issues. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *see also AT&T Techs.*, 475 U.S. at 649; *First Options*, 514 U.S. at 944. Where there is ambiguity, such questions are resolved in favor of determination by a judge, not an arbitrator. *Lamps Plus*, 139 S. Ct. at 1416-17 ("silence or ambiguity" insufficient because it "*might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide*") (emphasis added). That high standard applies because the question of arbitrability "is rather arcane," so "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *First Options*, 514 U.S. at 945. Thus, the Sixth Circuit has only found a clear and unmistakable agreement to arbitrate gateway issues where the parties actually submit the issue to an arbitrator without reservation, or an agreement explicitly delegates the issue to the arbitrator.

*See Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am.*, 440 F.3d 809, 813 (6th Cir. 2006); *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 398 (6th Cir. 2017).

That standard is not met here. As explained below, Piersing's agreement does not contain *any* delegation clause, and the incorporation of the AAA rules does not establish a clear and unmistakable agreement. Blanton's agreement includes a limited delegation clause not applicable to Domino's.

**1.    Incorporation of AAA Rules Is Not a Clear and Unmistakable Agreement to Arbitrate**

The incorporation of AAA rules into Piersing's arbitration agreement, standing alone, is not clear and unmistakable evidence of an agreement to arbitrate gateway questions.[3] The Sixth Circuit has rejected that the incorporation of arbitration rules, as a matter of law, clearly and unmistakably demonstrates an agreement to arbitrate a particular issue. *See*, *e.g.*, *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) (holding that "[t]he mere incorporation of the AAA's rules is not sufficient evidence that the parties agreed to classwide arbitration"); *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 95 (6th Cir. 1987) (incorporation of arbitration rules insufficient proof of agreement to arbitrate

---

[3] The Supreme Court has reserved this question. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("We express no view about whether the contract [that incorporated AAA rules] . . . in fact delegated the arbitrability question to an arbitrator.").

arbitrability), abrogated on other grounds by *Vaden v. Discover Bank*, 556 U.S. 49 (2009).  That alone defeats Domino's motion.

Even if agreement by incorporation were permissible in some circumstances, here, the plain text of AAA Rule 6(a) merely provides the arbitrator with *some* authority, not exclusive authority: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  AAA, Employment Rules, Rule 6(a).  Rule 6(a) does *not* say the arbitrator shall have the *exclusive* power to decide such questions.  *See Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-172-DAD-JLT, 2019 WL 2339783, at *4 (C.D. Cal. June 3, 2019) ("nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so") (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012)).[4]  Rather, the rule merely authorizes the arbitrator to decide those questions, *if the parties agree to have her do so*.  They may make such an agreement by submitting the issue to her without reservation, *Cleveland Electric*, 440 F.3d at 813, or by explicitly saying that they

---

[4]  *See also SPBR Holdings, Inc. v. KWAL-Howells, Inc.*, No. 13-cv-543-W-FJG, 2013 WL 6795923, at *3 (D. Colo. Dec. 23, 2013) (incorporation of AAA rules "does not evidence a 'clear and unmistakable' intent that the parties agreed to have an arbitrator decide the question of arbitrability"); *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *13 (N.D. Cal. June 25, 2014), *aff'd on other grounds*, 840 F.3d 1016 (9th Cir. 2016).

will do so in lieu of having a court decide, *Danley*, 680 F. App'x at 398.  Neither occurred here.  To the contrary, Rule 6(a)'s language falls far short of an exclusive delegation to the arbitrator, compared to other terms in the agreement.  *Compare* Dkt. 61-4 at 1 ("consent[ing] to resolve any claim covered by this Agreement through binding arbitration, *rather than through court litigation*;" arbitration "shall be the *sole* and *exclusive* remedy for resolving any claims") (emphasis added).

At most, Rule 6(a) is ambiguous about whether the parties agreed to grant an arbitrator exclusive power to decide gateway issues and thus waive the right to have a court do so.  Ambiguity, however, cannot be used to manufacture consent to arbitrate.  *Reed-Elsevier*, 734 F.3d at 599 (agreement which is "silent or ambiguous as to whether an arbitrator should determine [questions of] arbitrability" cannot "wrest that decision from the courts"); *see also Lamps Plus*, 139 S. Ct. at 1419 ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").  Thus, Domino's has not established Piersing's clear and unmistakable delegation of gateway issues to the arbitrator.

To argue otherwise, Domino's relies exclusively on non-binding, unpersuasive, and distinguishable decisions of other district courts.  Br. at 12-13.  These decisions pre-date *Lamps Plus*, which emphatically held that ambiguity cannot be the basis for inferring consent to arbitrate.  They are also inconsistent with the Sixth Circuit's holdings in *Reed-Elsevier* and *AlixPartners*.  Those cases found

silence, ambiguity, and the incorporation of arbitration rules inadequate to establish

clear evidence of an agreement, as explained *supra*.  Domino's authorities fail to

heed AAA Rule 6(a)'s plain text, which does *not* say that the parties *must* submit

arbitrability issues to the arbitrator.  In short, they are not well reasoned.  *See Smith*

*v. Astrue*, 639 F. Supp. 2d 836, 841 (W.D. Mich. 2009) (whether to follow non-

binding authorities "turns on factors such as . . . whether they comport with the

letter and spirit of the binding precedents that govern the relevant area of the law"

and "whether [they] employ logical reasoning").[5]

### 2.    There Must Be a Clear and Unmistakable Agreement to Arbitrate Gateway Issues with *Non-Signatories*

Even if Blanton or Piersing agreed to delegate *some* gateway questions,

Domino's has not shown that they agreed to arbitrate the particular gateway

question here (the rights of non-signatories), nor that they agreed to do so *with*

---

[5]    Domino's authorities also involve sophisticated commercial entities, not individual low-wage workers.  *See Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 776, 774 (E.D. Mich. 2010) (distributor was "a business man, suing for millions of dollars in unpaid commissions" who "reviewed the contract before signing it" and "requested that [the defendant] draft a written agreement confirming their relationship"); *Morsey Constructors, LLC v. Burns & Roe Enters., Inc.*, No. 5:08-cv-23-R, 2008 WL 3833588, at *4 (W.D. Ky. Aug. 13, 2008) (commercial entities); *Book Depot P'ship v. Am. Book Co.*, No. 3:05-cv-163, 2005 WL 1513155, at *3 (E.D. Tenn. June 24, 2005) (same).  Courts commonly consider whether the parties are sophisticated entities.  *See, e.g.*, *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018) (declining to decide whether the incorporation rule would also apply "when one or more party is unsophisticated"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) (rule applies "between sophisticated parties to commercial contracts").

*Domino's*.  *See Lamps Plus*, 139 S. Ct. at 1416 (parties choose "with whom they will arbitrate" *and* "the issues subject to arbitration").  Many courts have held that a non-signatory's right to compel arbitration is a distinct gateway question that must be clearly and unmistakably delegated.[6]  In the absence of such clear evidence, the Court decides the scope of a non-signatory's rights under an arbitration agreement.  *See Kramer*, 705 F.3d at 1127 (court decides arbitrability in "the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories"); *AT&T Techs.*, 475 U.S. at 649; *First Options*, 514 U.S. at 944; *Reed-Elsevier*, 734 F.3d at 599.

Piersing.  Piersing's arbitration agreement does not contain *any* explicit delegation clause, so there is *no* evidence he agreed to arbitrate gateway questions with *any* party.  *See* Dkt. 61-4.  Even assuming, as Domino's contends (wrongly, *see* Section IV.B.1, *supra*), that by agreeing to abide by AAA Rules, he agreed to arbitrate disputes going to the "existence, scope or validity of the arbitration agreement," that would *not* include disputes with *Domino's* regarding its rights as a non-signatory.  As the court found in *Soto*, that is an entirely different question: the

---

[6]  *See*, *e.g.*, *Bd. of Trs. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (court decides whether non-signatory is bound by arbitration agreement "unless the parties have clearly delegated to the arbitrator responsibility for this determination"); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012) (same); *E&E Co., Ltd. v. Light in the Box Ltd.*, No. 15-cv-69-EMC, 2015 WL 5915432, at *4 (N.D. Cal. Oct. 9, 2015) (same); *Qpro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) (same).

"threshold issue of whether the delegation clause is even applicable to a certain party" does not fall under "the interpretation and scope of th[e] Arbitration Clause, and the arbitrability of the claim or dispute." 946 F. Supp. 2d at 954. *See also E&E Co.*, 2015 WL 5915432, at *4 (question "of who is a party to the arbitration agreement" was not related to "the existence, validity or scope of the arbitration agreement(s)"); *QPro*, 761 F. Supp. 2d at 497 (same).

Blanton.  Similarly, whether non-party Domino's may compel arbitration is not a dispute "relating to the scope, validity, or enforceability of this Arbitration Agreement." Dkt. 61-3 at 2. *See Soto*, *supra*; *E&E Co.*, *supra*; *QPro*, *supra*.

The Court should decide Domino's rights to arbitrate as a non-signatory.

## C.   Equitable Estoppel Does Not Permit Domino's to Arbitrate Plaintiffs' Antitrust Claims

Because it is not a signatory to any arbitration agreement with Plaintiffs,[7] Domino's argues that equitable estoppel permits it to compel arbitration. Domino's has not met its heavy burden to justify application of equitable estoppel here. *See R.E. v. Pac. Fertility Ctr.*, No. 18-cv-1586-JSC, 2019 WL 1331044, at *7 (N.D. Cal. Mar. 25, 2019). As explained below, equitable estoppel only applies when (1) a signatory seeks direct or indirect benefits under a contract with an arbitration clause,

---

[7]  It does not matter that the agreements are "broadly worded," Br. at 14-15, 15 n.6, because the presumption that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983), does not apply when there is no agreement between Plaintiffs and Domino's.

while seeking to avoid arbitration; or (2) the non-signatory defendant's alleged

misconduct is intimately intertwined with the terms of a contract with an arbitration

clause.  Neither applies.

### 1.    Plaintiffs Are Not Seeking Direct or Indirect Benefits Under Their Arbitration Agreements

Domino's irrelevantly and incomprehensibly says that Plaintiffs are "relying

on the *subject* of [their] arbitration agreement[s]."  Br. at 17 (emphasis added).  For

equitable estoppel purposes, however:

> a nonsignatory may be bound to an arbitration agreement under an
> estoppel theory when the nonsignatory seeks a *direct* benefit from the
> contract while disavowing the arbitration provision.  When only an
> indirect benefit is sought, however, it is only a signatory that may be
> estopped from avoiding arbitration with a nonsignatory when the issues
> the nonsignatory is seeking to resolve in arbitration are *intertwined*
> with the underlying contract.

*Javitch*, 315 F.3d at 629.[8]  A direct or indirect benefit under an agreement must be

sought.  That the agreement's subject matter is simply touched upon is insufficient.

Plaintiffs' claims do not arise from any written agreement, but rather under

federal and (for Piersing only) Washington state antitrust laws protecting their right

to a competitive labor market.  FAC ¶¶ 143-162.  To prove their claims, Plaintiffs

will have to demonstrate that Domino's entered into and orchestrated an

---

[8]  As to Piersing, the Washington Supreme Court holds only that equitable estoppel
"precludes a party from claiming the benefits of a contract while simultaneously
attempting to avoid the burdens that contract imposes."  *Townsend v. Quadrant
Corp.*, 268 P.3d 917, 922 (Wash. 2012) (arbitration required when a nonsignatory
"knowingly exploits the contract in which the arbitration agreement is contained").

anticompetitive agreement between and amongst its franchisees that suppressed Plaintiffs' wages and those of potential class members.  Dkt. 51 at 8-10.  The terms of Plaintiffs' arbitration agreements (the only contract Domino's has identified) are simply irrelevant; Plaintiffs seek no "benefits" from those agreements, Plaintiffs' statutory claims are not intertwined with their terms or dependent on them, and the claims would exist with or without an arbitration or employment agreement.[9]

Indeed, Plaintiffs' arbitration agreements are stand-alone documents.  They are not embedded into any employment contract, as both plaintiffs were at-will employees who could be hired or fired for any lawful reason.  *Ford v. Trendwest Resorts, Inc.*, 146 Wash. 2d 146, 154-55 (2002); *Perkins v. Mem. Hosp. of S. Bend*, 121 N.E.3d 1089, 1092 (Ind. App. Ct. 2019).  The arbitration agreements expressly disclaimed creating any employment-related rights or contracts.  *See*, *e.g.*, Dkt. 61-4 at 2 (Piersing's arbitration agreement does not "in any way alter the 'at-will' status of [Piersing's] employment"); Dkt. 61-3 at 6 ("This Arbitration Agreement is not,

---

[9]  *See*, *e.g.*, *Franklin Templeton Bank & Tr. v. Butler*, No. 2:15-cv-435-JNP-EJF, 2016 WL 3129141, at *4 (D. Utah June 2, 2016) (under WA law, equitable estoppel did not require arbitration where claim arose from statutory rights, rather than terms of an agreement with arbitration clause); *Madera W. Condominium Ass'n v. Marx/Okubo*, 175 Wash. App. 1032 (2013) (third-party could not enforce arbitration agreement where plaintiff's tort claims were not based on terms of contract containing arbitration clause); *Williams v. Orentlicher*, 939 N.E.2d 663, 671 (Ind. App. Ct. 2010) (non-signatory could not compel arbitration through equitable estoppel because plaintiff brought common law claims "independent of the employment agreements" with arbitration clauses).

and shall not, be construed to create any contract of employment express, or implied.  This Arbitration Agreement does not in any way alter the 'at-will' status of the Employee's employment.").  And they do not contain any terms or obligations relevant to Plaintiffs' antitrust claims.

Because Plaintiffs have no employment rights under their arbitration agreements, they cannot be seeking a direct or indirect benefit under them. Equitable estoppel is, therefore, inapplicable.  *Javitch*, 315 F.3d at 629; *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752, 753 (9th Cir. 2018) ("Equitable estoppel is inapplicable because [plaintiff's] allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [arbitration agreement]."); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (no estoppel where plaintiffs' claims "do not rely on, and are not intertwined with, the *substance*" of the agreement containing an arbitration clause) (emphasis added); *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 922-24 (8th Cir. 2013) (equitable estoppel did not require arbitration of statutory antitrust claims which "exist independent of the supply and arbitration agreements"); *cf. In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (statutory RICO claim not did not "rely upon or presume the existence of an underlying contract," dependence on which is "always the *sine qua non* of an appropriate situation for applying

equitable estoppel"), judgment reversed on other grounds by *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).

Even if there *were* a written employment agreement containing an arbitration clause, that would not mean Plaintiffs' antitrust claims were "intertwined with the underlying contract." *Javitch*, 315 F.3d at 629. For instance, in *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851 (N.D. Cal. 2015), plaintiffs with employment contracts containing arbitration clauses sued the conspiring employers for agreeing not to poach each other's employees, thereby suppressing wages. The court held that the non-signatory co-defendants could not compel arbitration under a theory of equitable estoppel because, like here, the plaintiff's Sherman Act claim "would be cognizable even if [he] had worked for [the defendant] *without* a written employment agreement." *Id.* at 866. The court reasoned that the conspiracy involved "alleged wrongful conduct that occurred outside the scope of the employment agreements." *Id.* Thus, the "claims do not rely on the existence of any particular contractual term." *Id.* at 867. It was not enough that the claims "may require reference to [the plaintiff's] employment agreements to establish the fact of his employment and the amount of compensation." *Id.* The same logic applies here.

### 2.   Defendants' Alleged Misconduct Is Not Intertwined with the Terms of Any Written Agreements with Plaintiffs

Domino's argues equitable estoppel also applies merely because Plaintiffs allege that Domino's conspired with its franchisee employers to suppress their wages.[10] Br. at 17.  That is not the correct test, however.  Domino's own authority recognizes that "[i]n applying equitable estoppel where the claims allege concerted misconduct or collusive behavior, the trend has been toward requiring that *the claims also closely relate to and are intertwined with the agreement containing the arbitration clause*," such that the "collusive conduct bear some relation to the agreement at issue."  *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2017 WL 3579753, at *6 (E.D. Mich. Apr. 18, 2017).

As explained above, Plaintiffs were at-will employees.  Their claims are not "intertwined" with the terms of *any* written contractual agreement but rather arise under the antitrust laws.  Plaintiffs have not alleged that Domino's or its franchisees violated any written contract.  As in *Nitsch*, the alleged conspiracy is not "founded in or intimately connected with the obligations of the underlying agreement."  100 F. Supp. 3d at 867-68 (alteration omitted).

---

[10]  Domino's has not cited authority that Washington or Indiana would recognize this conspiracy-based theory of equitable estoppel, which is sufficient grounds to deny its motion.  *McClure v. Davis Wright Tremaine* did not invoke a co-conspirator theory of equitable estoppel but rather found that the agreement explicitly covered disputes with non-parties.  77 Wash. App. 312, 315 (1995).

Furthermore, here, the price of Blanton's and Piersing's labor was not set forth in any contract. That distinguishes this case from *Automotive Parts*, where the arbitration clause appeared in a sales contract in which "the deceit or conspiracy alleged [were] reflected in the [contract's] price terms." 2017 WL 3579753, at *8.[11] *Accord Wholesale Grocery Prods.*, 707 F.3d at 924 (no equitable estoppel of antitrust claims where contracts did not specify price terms).

In nearly all of Domino's authorities, the plaintiff named both signatories and non-signatories as defendants, and was not permitted to evade arbitration just because non-signatories had also been sued. In *In re Titanium Dioxide Antitrust Litigation*, for instance, the court found that non-signatory defendants could compel arbitration because "the arbitration clauses entered into by the class members and [two signatory defendants] would be rendered meaningless if not for equitable estoppel because the Plaintiffs proceed in this action under a theory of joint and several liability." 962 F. Supp. 2d 840, 850 (D. Md. 2013).[12] Piersing and Blanton,

---

[11] Plaintiffs do not concede that the inclusion of price terms would alter the analysis. *Nitsch*, 100 F. Supp. 3d at 867. The Court need not reach that issue.

[12] *See also PFS Invs., Inc. v. Imhoff*, No. 11-10142, 2011 WL 1135538, at *38 (E.D. Mich. Mar. 25, 2011) (concerted misconduct between signatory and non-signatory co-defendants); *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (same); *Tobel v. AXA Equitable Live Ins.*, No. 298129, 2012 WL 555801, at *11 (Mich. Ct. App. Feb. 21, 2012) (same); *Thomas v. Right Choice Staffing Grp.*, No. 15-10055, 2015 WL 4078173, at *6 (E.D. Mich. July 6, 2015) (same); *Am. Reliable Ins. Co. v. Arrington*, 269 F. Supp. 2d 758, 762 (S.D. Miss. 2003) (same); *Roberson v. Money Tree of Ala., Inc.*,

by contrast, are not suing any signatories—they have not brought an antitrust claim, and do not intend to, against Carpe Diem or Wilson Pizza.  In any case, as the court held in *Nitsch*, equitable estoppel does not require arbitration of claims against a non-signatory merely because a signatory is a co-defendant.  *Nitsch*, 100 F. Supp. 3d at 869 ("The doctrine of equitable estoppel is narrowly confined when applied to compel arbitration as to nonsignatories . . . .").

In Domino's other authorities, arbitration was compelled because the non-signatory was the agent of the signatory.  *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (agents of signatory entitled to compel arbitration); *Cole v. FES*, No. 10-12041, 2010 WL 3584270, at *3 (E.D. Mich. Sept. 13, 2010) (same); *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 382-83 (E.D. Ky. 2006) (same).  In contrast, here, Domino's is not an agent of Carpe Diem or Wilson Pizza with respect to employment.  *See* Defs.' Br. at 21 (rejecting that "the defendants and Domino's franchisees are, in fact, 'agents' of each other"); *see* Section II.AII.A, *supra* (Domino's disavows a shared role in franchisees' employment relations).

Contrary to Domino's argument (Br. at 20-21), the mere fact that a signatory has conspired with a non-signatory does not require arbitration.  The cases on which Domino's relies do not support that proposition.  In *Kruse*, for example, the alleged non-signatory co-conspirator was "an agent and employee" of a signatory

954 F. Supp. 1519, 1529 n.11 (M.D. Ala. 1997) (same).

defendant.  458 F. Supp. 2d at 382-83.  In *James T. Scatuorchio Racing Stable, LLC. v. Walmac Stud Management, LLC*, the court "recognize[ed] that collusion, interrelatedness, or agency is not, by itself, enough to warrant" arbitration, and only compelled arbitration after concluding that "the basis for the plaintiffs' claims [are] obligations under the [arbitration agreement]."  No. 5:11-374-DCR, 2014 WL 1281475, at *7 (E.D. Ky. Mar. 27, 2014).  The court in *Elder v. BMO Harris Bank* ordered arbitration because, unlike here, the plaintiff "must rely on the terms of the written agreement in which the arbitration clause is contained."  No. 13-3043, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014).[13]  None involved a situation where only one non-signatory co-conspirator was sued and the claims did not rest on the terms of a written agreement with an arbitration clause.

Finally, this case does not involve "artful pleading."  That concept suggests an attempt to plead a contract-based claim as some other cause of action to avoid an arbitration clause.  In *Terwilliger v. Greyhound Lines, Inc.*, for example, "artful pleading" was found where a tort claim was "essentially" based on the defendant's violation of a collective bargaining agreement containing an arbitration clause.  882 F.2d 1033, 1038 (6th Cir. 1989).  Plaintiffs' antitrust claims, as explained above, are independent of any written agreement.  Moreover, Blanton could not have engaged

---

[13]  *American Reliable Insurance* and *Roberson* are inapposite for the reasons stated above, *supra* n.12.

in artful pleading as he had not signed an arbitration agreement when he filed this case.  Piersing worked for two franchisees (only one of which imposed an arbitration agreement) and sued neither, nor was he obliged to.  Plaintiffs' decisions had nothing to do with arbitration; rather, they made a sensible and pragmatic choice to sue only Domino's, the ringleader of the conspiracy, rather than thousands of franchisees nationwide.

In sum, Domino's has not shown that equitable estoppel should apply here. Ordering arbitration would not vindicate "the underlying purpose of the doctrine [of] prevent[ing] signatories to a contract with an arbitration clause from simultaneously invoking the duties and obligations . . . under the agreement . . . while seeking to avoid arbitration."  *Nitsch*, 100 F. Supp. 3d at 868 (alterations omitted).  The real inequity would be forcing Piersing and Blanton to arbitrate a claim against Domino's without their consent.

Finally, the class waivers apply only to claims against Plaintiffs' franchisee-employers, so they do not apply to Domino's.  *See* Dkt. 61-3 at 3-4; Dkt. 61-4 at 1.

### D.    The Court Should Invalidate Blanton's Agreement

The Court should deny Domino's motion using its power to issue orders necessary to "protect class members and fairly conduct the action."  Fed. R. Civ. P. 23(d).  When Blanton signed the arbitration agreement, he had already filed this action and the parties had fully briefed the motion to dismiss.  Yet the agreement

makes no mention of this pending case.  In fact, when Blanton signed the agreement, ***Wilson Pizza's general manager told him that the arbitration agreement would not cover this lawsuit or affect it***.  Blanton Decl. ¶¶ 4-5.

The misleading and unfair circumstances in which Blanton was induced into signing the arbitration agreement are sufficient grounds for the Court to deny Domino's motion to compel arbitration of this case.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (courts have "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties"); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (arbitration agreements "may not be enforced" when "added . . . without notice, after this litigation commenced"); *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609-JM-WMC, 2012 WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) (disallowing defendant from "attempt[ing] to impose an arbitration agreement upon putative class members during the pendency of litigation . . . ."); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922-23 (11th Cir. 2014) (affirming refusal to enforce arbitration agreement promulgated after initiation of suit under court's authority to manage pending collective action); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-cv-7181 2011 WL 2713741, at *3 (E.D. Pa. July 13, 2011) (invalidating arbitration agreement imposed while collective action was pending); *cf. Ontiveros v. Safelite Fulfillment, Inc.*, No. CV 15-7118-DMG (RAOx), 2017 WL

6043078, at *8 (C.D. Cal. Oct. 16, 2017) (invalidating settlement agreements promulgated to class members without explanation of effect on pending litigation).

### E. **Alternatively, Piersing and Blanton Should Be Permitted to Narrow Their Claims**

If the Court concludes arbitration may be compelled for either Plaintiff, the Court should permit them to narrow their claims.  Piersing and Blanton also worked for other franchisees (NFG and the franchisee-owned restaurant in Port Orange, Florida, respectively, *see* FAC ¶¶ 14-15, 101-07), and neither of their arbitration agreements purports to cover claims for damages based on that separate work.  They should be permitted to relinquish claims for damages based on hours worked at Carpe Diem and Wilson Pizza, and, if necessary, to proceed in this Court for damages claims based on hours worked at other franchisees.

## V. **CONCLUSION**

The Court should deny Domino's motion to compel arbitration or, in the alternative, stay the case pending arbitration of gateway issues.

Dated:  August 22, 2019

*/s/   Dean M. Harvey*
        Dean M. Harvey

Dean M. Harvey
Anne B. Shaver
Lin Y. Chan
Yaman Salahi
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel:  415-956-1000
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com
ysalahi@lchb.com

Walter W. Noss
Stephanie A. Hackett
Sean C. Russell
**SCOTT + SCOTT ATTORNEYS AT
LAW LLP**
600 West Broadway, Suite 3300
San Diego, California 92101
Tel: 619-233-4565
wnoss@scott-scott.com
shackett@scott-scott.com
sean.russell@scott-scott.com

Michelle E. Conston
**SCOTT + SCOTT ATTORNEYS AT
LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel:  212-223-6444
mconston@scott-scott.com

Derek Y. Brandt
**McCUNE WRIGHT AREVALO, LLP**
101 W. Vandalia Street, Suite 200
Edwardsville, Illinois 62025
Tel: 618-307-6116
dyb@mccunewright.com

Richard D. McCune
Michele M. Vercoski
**McCUNE WRIGHT AREVALO, LLP**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Tel: 909-557-1250
rdm@mccunewright.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI  48307
Tel: 248-841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the accompanying ***PLAINTIFFS'***

***OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION***

was filed on this date electronically through the Court's CM/ECF system, which

will send an electronic notice to counsel of record for all parties.


Dated:  August 22, 2019                                    */s/ Dean M. Harvey*
                                                              Dean M. Harvey