# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HARLEY BLANTON and DEREK PIERSING, on Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>DOMINO'S PIZZA FRANCHISING LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA MASTER ISSUER LLC, a Delaware Limited Liability Company; DOMINO'S PIZZA LLC, a Michigan Limited Liability Company; and DOMINO'S PIZZA, INC., a Delaware Corporation.<br><br>　　　　　Defendants. | No. 2:18-cv-13207-VAR-DRG<br><br>Hon. Victoria A. Roberts<br>Magistrate Judge David R. Grand |

## REPLY IN SUPPORT OF THE DEFENDANTS' MOTION TO COMPEL ARBITRATION

# **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990)

*Amway Global v. Woodward*, 744 F. Supp. 2d 657 (E.D. Mich. 2010)

*Bishop v. Gosiger, Inc*., 692 F. Supp. 2d 762 (E.D. Mich. 2010)

*PFS Investments, Inc. v. Imhoff*, 2011 WL 1135538 (E.D. Mich. Mar. 25, 2011)

*Book Depot P'ship v. Am. Book Co*., 2005 WL 1513155 (E.D. Tenn. 2005)

*Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)

*Contec Corp. v. Remote Sol., Co*., 398 F.3d 205 (2d Cir. 2005)

## **TABLE OF CONTENTS**

**Page**

OVERVIEW ............................................................................................................1

ARGUMENT ..........................................................................................................1

I. The Arbitrator Decides the Threshold Question of Arbitrability ...................1

II. The Defendants May Invoke Arbitration.......................................................4

III. There Is Nothing Improper About Blanton's Arbitration Agreement ...........6

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AlixPartners, LLP v. Brewington*,
   836 F.3d 543 (6th Cir. 2016)......................................................................................3

*Amway Global v. Woodward*,
   744 F. Supp. 2d 657 (E.D. Mich. 2010) ....................................................................3

*Arnold v. Arnold Corp.*,
   920 F.2d 1269 (6th Cir. 1990)....................................................................................5

*Awuah v. Coverall N. Am., Inc.*,
   554 F.3d 7 (1st Cir. 2009) ..........................................................................................2

*Bishop v. Gosiger, Inc.*,
   692 F. Supp. 2d 762 (E.D. Mich. 2010) ....................................................................3

*Book Depot P'ship v. Am. Book Co.*,
   2005 WL 1513155 (E.D. Tenn. 2005)........................................................................3

*Cincinnati Gas & Elec. v. Benjamin F. Shaw Co.*,
   706 F.2d 155 (6th Cir. 1983)......................................................................................2

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005)......................................................................................2

*Fallo v. High-Tech Inst.*,
   559 F.3d 874 (8th Cir. 2009)......................................................................................2

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019)..................................................................................................4

*Kruse v. AFLAC Int'l, Inc.*,
   458 F. Supp. 2d 375 (E.D. Ky. 2006).........................................................................5

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019)................................................................................................3

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .............................................................................. 2

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ................................................................................ 2

*PFS Investments, Inc. v. Imhoff*,
    2011 WL 1135538 (E.D. Mich. Mar. 25, 2011) ................................................... 5

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) ............................................................................ 2

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*,
    734 F.3d 594 (6th Cir. 2013) ................................................................................ 3

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................................................ 2

*Smith Barney, Inc. v. Sarver*,
    108 F.3d 92 (6th Cir. 1987) .................................................................................. 4

*Terminix Int'l Co. v. Palmer Ranch LP*,
    432 F.3d 1327 (11th Cir. 2005) ............................................................................ 2

**Statutes**

9 U.S.C. § 4 ............................................................................................................... 2

# OVERVIEW

The plaintiffs' opposition flatly mistakes the law, attempts to raise fact issues for the arbitrator to decide, and fails to present any viable basis for denying this motion. In sum:

- The overwhelming on-point case law dictates that the arbitrator must decide whether this matter should be arbitrated.

- The very nature of the plaintiffs' antitrust conspiracy claim establishes why this case must go to arbitration, as the plaintiffs themselves claim it was the franchisees (with which they entered arbitration agreements) that were paying the "unfair" wages.

- Blanton's agreement is valid and enforceable. The plaintiffs' admissions in recent filings confirm that this case should be arbitrated.

# ARGUMENT

## I. The Arbitrator Decides the Threshold Question of Arbitrability.

An arbitrator must decide all gateway issues of arbitrability because the plaintiffs' agreements expressly incorporate AAA rules delegating that authority to the arbitrator. The plaintiffs misconstrue the law and devote pages to cases that concern what happens if an arbitration agreement is ambiguous on whether its terms provide for classwide arbitration. That is a red herring. In this case there is no question that—*if* there is arbitration—the arbitration would *not* be classwide, because the agreements unquestionably have explicit class waivers. The only issue for the Court at this time is who—the arbitrator or this Court—gets to decide whether the arbitration agreements apply to this dispute and their scope.

The law is clear (and virtually every circuit court to have considered the issue agrees) that the incorporation of the AAA rules constitutes clear and unmistakable evidence that the arbitrator decides arbitrability. *E.g.*, *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005).[1] A signatory to an arbitration agreement "incorporating by reference the AAA Rules … cannot … disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability", even where a non-signatory is seeking to compel arbitration. *Id.* (emphasis in original). As the First Circuit has observed, the parties' incorporation of the AAA rules is "about as 'clear and unmistakable' [an agreement to delegate arbitrability questions to the arbitrator] as language can get[.]" *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009).[2]

---

[1] *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005). The plaintiffs ignore all of these circuit court cases in favor of a few non-binding and unpersuasive district court decisions that are in the minority. (Opp. at 10 & n.4.)

[2] Blanton argues that the AAA rules are ambiguous and cannot constitute "clear and unmistakable evidence" of the parties' intent to delegate questions of arbitrability to the arbitrator. If this were true (it is not, *see* fn.1), the Court would need to conduct a trial to resolve the issue. A delegation clause is itself an arbitration agreement (*see Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)), and "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *Cincinnati Gas & Elec. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir. 1983).

The plaintiffs misstate the law in arguing that the Sixth Circuit has "rejected that the incorporation of [the AAA] arbitration rules" demonstrates an agreement to arbitrate. (Opp. at 9.) In *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594 (6th Cir. 2013), the Court addressed only whether incorporation of the AAA rules in the *absence* of an explicit provision addressing classwide arbitration would allow the arbitrator to decide whether an arbitration clause permitted classwide arbitration. That issue is not the issue here: the plaintiffs' arbitration agreements have unequivocal class waivers. The only question before the Court at this time is the threshhold one of whether the Court or the arbitrator decides whether the matter should be arbitrated. And, on that issue, district courts in the Sixth Circuit consistently hold that incorporation of AAA rules is "clear and unmistakable" evidence that the parties delegated arbitrability questions to the arbitrator. *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769 (E.D. Mich. 2010); *Amway Global v. Woodward*, 744 F. Supp. 2d 657, 664 (E.D. Mich. 2010); *Book Depot P'ship v. Am. Book Co.*, 2005 WL 1513155, at *3 (E.D. Tenn. 2005).

The plaintiffs cite irrelevant Supreme Court and Sixth Circuit cases on different topics—*i.e.*, not on who decides arbitrability. They rely heavily on *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019), but it addressed whether courts may infer from an ambiguous agreement that parties consented to classwide arbitration. *AlixPartners, LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016), also

3

concerned classwide arbitration, while contrary to the plaintiffs' characterization, *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 95 (6th Cir. 1987) considered only whether a securities plaintiff had timely sought arbitration under the NASD Code.

The question of who gets to decide if this case goes to arbitration does not change merely because Domino's is not a signatory. "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). The plaintiffs cite nothing that warrants a different result in this case, and to the defendants' knowledge, no such authority exists.

## II. The Defendants May Invoke Arbitration.

The plaintiffs fail to address that it was the franchisees—including the ones with which they entered the arbitration agreements—that they alleged to have conspired with the defendants in a conspiracy to suppress wages and mobility. The franchisees are the ones who *paid* the supposedly unfair wages. Yet the plaintiffs ask the Court to ignore the agreements that specifically require them to arbitrate disputes about wages (including Blanton's agreement, which includes the franchisor explicity as a contracting party). The law requires that all doubts be resolved in favor of arbitration, foreclosing this transparent attempt to evade the agreements.

There is also no question that the defendants may invoke the agreements' requirement to arbitrate. Courts in this Circuit and across the country agree that

"[w]here a party alleges that a nonsignatory engaged in a conspiracy with a signatory," the nonsignatory can enforce an arbitration agreement. *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 383 (E.D. Ky. 2006). If a signatory to an arbitration agreement "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint … the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990). The plaintiffs cannot allege a conspiracy, name defendants the "ringleader[s]," and then elude arbitration by electing not to sue the co-conspirators with which they entered arbitration agreements. (Br. at 14.) This *is* artful pleading, no matter what flawed justifications they attempt to offer. The plaintiffs' reliance on the provisions in the franchise agreement that disclaim an agency relationship is misplaced given their conspiracy allegations.

Equitable estoppel likewise applies. The court in *PFS Investments, Inc. v. Imhoff*, 2011 WL 1135538, at \*8 (E.D. Mich. Mar. 25, 2011), ruled that "arbitration is appropriate [under equitable estoppel] where 'the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories of the contract.'" The plaintiffs attempt to evade this simple principle by overcomplicating how equitable estoppel works. They have brought claims related to their wages. The franchisees pay their wages. The arbitration agreements apply to claims that

5

they were not paid enough. The notion that they are "at will" employees and would need to have a contract for the arbitration provisions to apply is without merit. (Opp. at 16.) Were that true, stand alone arbitration agreements could never apply to *anything* precisely because they are stand alone. The complaint has no viable conspiracy claim without the alleged "interdependent and concerted misconduct" of both the defendants and the franchisees. The plaintiffs therefore should be estopped from avoiding the arbitration agreements.

### III. There Is Nothing Improper About Blanton's Arbitration Agreement.

The plaintiffs do not tell the full story about Blanton's situation. The initial complaint alleged only that he worked for a Florida franchise and raised a conspiracy claim that his wages and mobility were suppressed because of the "conspiracy." (ECF 1 ¶¶ 14, 98, 103.) Specifically, Blanton's liability theory is that the "conspiratorial" provisions suppressed his wages and mobility at *all* Domino's franchisees. In the June 27, 2019 amended complaint, Blanton revealed for the first time that, contrary to his original allegations, he worked for a different franchisee—Wilson Pizza in Indiana—*before* he filed this suit and before he switched to the Florida franchise. (ECF 56 ¶ 14.) Piersing admits that he, too, has been employed at multiple Domino's stores. (ECF 56 ¶¶ 15, 105-110.) And, Blanton has now disclosed that despite the supposed limitations on his mobility, he went *back* to the Indiana franchise after leaving Florida. When he did so, he (like every other

6

employee) signed the arbitration agreement that precluded him from suing in court for "past" or "present" claims concerning his wages. (Br. Ex. A-1 at § II.A.) Those terms squarely apply to wages concerning his employment at Domino's franchisees, and there is no legitimate question that this case presents such a claim.

As for the claim that a Wilson Pizza manager told Blanton the arbitration agreement would not affect this case, that is a fact issue for the arbitrator, as it concerns the validity of the arbitration agreement—a question that the parties specifically delegated to the arbitrator. Moreover, even if such a statement was made (and it was not; *see* Ex. A (Emery Dec.)), it would not matter anyway, because (i) the arbitration agreement bars parole representations, (ii) the supposed representations contravene the written agreement, (iii) the supposed representations are on matters of law, and (iv) Blanton could have opted out of the agreement. (Br. Ex. A-1 at § VI, VIII & IX.)[3]

Dated: September 10, 2019

By: */s/ J. Robert Robertson*

J. Robert Robertson
Ill. Bar #6204009
Norman M. Leon
Ill. Bar #6239480
John J. Hamill
Ill. Bar #6217530
Michael S. Pullos

Edward J. Hood (P42953)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
T: 313-965-8591
ehood@clarkhill.com

---

[3] The plaintiffs' request to narrow the case makes no sense given their claim that the franchisees participated in the supposed conspiracy against the putative class. In any event, the arbitrator should determine the scope of the agreements.

8

| | |
|---|---|
| Ill. Bar #6293587<br>Mary M.M. Shepro<br>Ill. Bar # 6321508<br>DLA Piper LLP (US)<br>444 West Lake Street Suite 900<br>Chicago, IL 60606-0089<br>Telephone:   312.368.4060<br>Facsimile:   312.251.5710<br>Robby.robertson@dlapiper.com<br>Norman.leon@dlapiper.com<br>John.hamill@dlapiper.com<br>Michael.pullos@dlapiper.com<br>Mary.shepro@dlapiper.com | David H. Bamberger<br>DLA Piper LLP (US)<br>500 Eighth Street, NW<br>Washington, D.C. 20004<br>Telephone: 202-799-4500<br>Facsimile: 202-799-5000<br>David.bamberger@dlapiper.com<br><br>*Counsel for Defendants* |

## CERTIFICATE OF SERVICE

I, J. Robert Robertson, do hereby certify that on this 10th day of September 2019, I caused a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION** to be filed with the Clerk of the Court through the ECF system, which gives notice to all parties of record.

*/s/ J. Robert Robertson*
J. Robert Robertson