UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARLEY BLANTON and DEREK
PIERSING, on Behalf of Themselves and
All Others Similar Situated,

        Plaintiffs,

v.

        Case No. 18-13207
        Hon. Victoria A. Roberts

DOMINO'S PIZZA FRANCHISING LLC,
*a Delaware Limited Liability Company*;
DOMINO'S PIZZA MASTER ISSUER LLC,
*a Delaware Limited Liability Company;* DOMINIO'S
PIZZA LLC, *a Michigan Limited Liability Corporation*;
and DOMINO'S PIZZA, Inc., *a Delaware Corporation.*

        Defendants.

_____/

**ORDER REGARING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS OR STAY PROCEEDINGS [ECF No. 61]**

**I.    INTRODUCTION**

The issue before the Court is whether Harley Blanton ("Blanton") and Derek Piersing ("Piersing") ("Plaintiffs") may proceed on their claims against Domino's Pizza Franchising LLC, Domino's Pizza Master Issuer LLC, Domino's Pizza LLC, and Domino's Pizza, Inc. ("Domino's") or proceed to arbitration under employment agreements they entered into.

Plaintiffs are former employees of Domino's franchisees. The franchisees are not named as parties to this lawsuit. Plaintiffs sue Domino's

1

on behalf of themselves and all others similarly situated. Plaintiffs allege a conspiracy between Domino's and its franchisees to suppress wages and limit employment opportunities. They sue under the Clayton Act (15 U.S.C. §§ 15 and 26), the Sherman Act (15 U.S.C. § 4), and the Washington Consumer Protection Act (Wash. Rev. Code 19.86.030) (only to the Washington subclass).

As employees of Domino's franchisees, Plaintiffs signed contracts agreeing to submit employment-related claims to arbitration.

Domino's says Plaintiffs' claims against it are subject to the arbitration agreements and moves to dismiss or, in the alternative, stay proceedings and compel arbitration.

For the reasons below, the Court **GRANTS** Defendants' Motion to Dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss, the nonmoving party must allege enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The facts must be construed in the light most favorable to the nonmoving party. *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923,

929–30 (6th Cir.2006) (quoting *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)).

The Federal Arbitration Act ("FAA") requires courts to "rigorously enforce" arbitration agreements. It outlines a "strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Questions about the interpretation and construction of arbitration agreements are governed by federal substantive law. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The party opposing arbitration has the burden to show that the agreement is not enforceable. *Green Tree Financial Corp.—Alabama v. Randolph*, 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

### III. ANALYSIS

### 1. Plaintiffs say that because Domino's did not sign the arbitration agreements, it cannot compel arbitration, and the delegation clauses are invalid

Plaintiffs' argument is first about contract formation: they say that Domino's did not sign the arbitration agreements, and so it cannot compel arbitration or invoke the delegation clauses.

Delegation clauses are clauses in the arbitration agreements which require "gateway" questions of "arbitrability"—whether the dispute is arbitrable or not, including any issues of scope, validity, or jurisdiction—to go to the arbitrator instead of a court. This argument applies to both Blanton and Piersing's arbitration agreements.

Piersing also argues that his arbitration agreement has no delegation clause at all. Domino's says that there are valid delegation clauses pertaining to both agreements and it may invoke them.

There must be "clear and unmistakable" evidence that the parties intended the arbitrator to decide questions of arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Absent "clear and unmistakable" evidence that the arbitrator decides questions of arbitrability, the Court has jurisdiction.

### A. The Arbitration Agreements

Blanton and Piersing's arbitration agreements differ; the Court considers them separately. The Court first addresses whether Domino's can compel arbitration with either party, and then turns to whether there is a valid delegation clause in each arbitration agreement.

**Blanton**

Blanton signed an arbitration agreement when he began employment at Wilson Pizza Company ("Wilson Pizza"). He says this arbitration agreement is invalid because Domino's did not sign it, and Domino's cannot invoke the delegation clause. Domino's contends that the broad definition of the "Company" as well as the broad language of the delegation clause, includes Domino's.

The Court first examines whether Domino's is a party to the arbitration agreement under the contract language.

a. **Contract formation is a question of state law**

Blanton's arbitration agreement says "this Arbitration Agreement will be governed by the Federal Arbitration Act. . . . All other legal decisions shall be determined by the federal, state or local law applicable in the state where the Team Member primarily works." [ECF No. 61-3, PageID.974]

Federal courts apply state law to determine whether ordinary contract law invalidates arbitration agreements. *See, e.g., Doctor's Associates, Inc.*

*v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). "[T]raditional principles of state law" determine whether a "contract [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories . . . and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (citation and internal quotation marks omitted).

Blanton signed the arbitration agreement and worked in Indiana; Indiana law applies to his contract formation argument.

   **b. Domino's is included in the plain language of the arbitration agreement**

The Blanton arbitration agreement states:

In this Arbitration Agreement, the term "the Company" refers to Wilson Pizza Company, and includes its parents, franchisors, subsidiaries, affiliates, predecessors, successors, and assigns . . . the duty to arbitrate under the Arbitration Agreement is mutual, and the decision to accept or to continue employment and to execute this Arbitration Agreement means that the Team Member and the Company have agreed to and are bound by this Arbitration Agreement. [ECF No. 61-3, PageID.974]

This language is clear and unmistakable. Domino's, as the franchisor of Wilson Pizza, is included in the definition of "the Company."

Blanton argues the inclusion of "franchisors" in the definition of "Company" does not include Domino's as a signatory. Blanton relies on

*Daimler Chrylser Corp. v. Franklin*, 814 N.E.2d 281 (Ind. App. Ct. 2004). But *Daimler* is factually dissimilar to this case.

In *Daimler*, an automobile manufacturer attempted to compel arbitration. It was not a party to the contract. *Id.* The parties to the contract were the car dealership and the purchaser. *Id.* The arbitration agreement included the "[dealership's] employees, agents, successors or assigns" as parties who could compel, and who were required to, arbitrate. *Id.* The automobile manufacturer was not an employee, agent, successor, or assign, and the court denied its motion to compel arbitration. *Id.* at 285. Here, the definition of "Company" includes Domino's. *Daimler* is not instructive, and Blanton points to no other authority.

Domino's is "the Company" under the arbitration agreement and can compel arbitration.

**<u>Piersing</u>**

Piersing signed an arbitration agreement when he began employment at Carpe Diem Pizza, Inc. ("Carpe Diem"). The parties:

> . . . mutually promise, agree, and consent to resolve any claim covered by this Agreement through binding arbitration, rather than through court litigation. Employee and Company further agree that such binding arbitration pursuant to this Agreement shall be the sole and exclusive remedy for resolving any claims or disputes covered by this Agreement. [ECF No. 61-4, PageID.982]

7

Piersing argues that if there is a delegation clause in his arbitration agreement, Domino's cannot invoke it because Domino's did not sign the contract. Domino's says that Piersing is equitably estopped from making this argument. Piersing says that even if this is true, there is no delegation clause in his arbitration agreement. Domino's contends that the arbitration agreement incorporates the rules of the American Arbitration Association, which includes delegation of gateway questions to the arbitrator.

The Court considers whether Piersing is equitably estopped from avoiding arbitration with Domino's.

### a. Since Piersing alleges a conspiracy between Domino's and its franchisees, he is equitably estopped from avoiding arbitration with Domino's.

Domino's argues that it can compel arbitration as a nonsignatory under ordinary conspiracy and agent principles or equitable estoppel. Domino's says that because Piersing alleges a conspiracy involving Domino's and its franchisees, he is estopped from avoiding arbitration by selectively suing only some of the alleged conspirators. Piersing did not sue his employer, who he claims was a participant in a civil conspiracy with Domino's; he only sued Domino's, a nonsignatory to the arbitration agreements.

Equitable estoppel is an ordinary contract defense. State law applies. Piersing signed his arbitration agreement in Washington, and a substantial

portion of the events at issue took place in Washington. Washington law applies.

As a general principle, Washington law does not allow nonsignatory defendants to apply equitable estoppel to a signatory plaintiff. *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). However, the Ninth Circuit noted that "where other circuits have granted motions to compel arbitration on behalf of non-signatory defendants against signatory plaintiffs, it was essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration." *Id.* at 848 (internal quotation and citation omitted). The court clarified that equitable estoppel prevents a party from claiming benefits under a contract while avoiding the burdens of that same contract and held that equitable estoppel did not apply because the claim in *Rajagopalan* was not intertwined with the subject of the arbitration agreement. *Id.*

The Washington Court of Appeals has also held that "where the claims against a parent and subsidiary are based on the same facts ... and are inherently inseparable, a court may order arbitration of claims against the parent even though the parent is not a party to the arbitration agreement." *Wiese v. Cach, LLL*, 358 P.3d 1213, 1222 (Wash. Ct. App. 2015) (internal quotation and citation omitted).

Piersing's claims are intertwined with his arbitration agreement, which covers all employment-related claims. Piersing alleges that Domino's and Carpe Diem are intertwined and conspired to set unfair wages and prevent employment opportunities.

Domino's and Carpe Diem are inseparable. The claims against them are inseparable. Equitable estoppel applies, and Domino's may compel Piersing to arbitration.

### b. Piersing's arguments that equitable estoppel does not apply are without merit

Piersing argues: (1) he is not trying to claim any benefit from the arbitration agreement, so equitable estoppel does not apply, and (2) his antitrust claims are not intertwined with the arbitration agreement, and so he cannot be compelled to arbitration.

### i. Whether Piersing seeks direct benefits from the arbitration agreement is irrelevant

Piersing argues that because the arbitration agreement was a stand-alone contract and did not confer other employment benefits, equitable estoppel does not apply.

This argument is without merit. Piersing relies on *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 628 (6th Cir. 2003). The central question in *Javitch* was whether the nonsignatory sought to benefit under a

contract that contained an arbitration agreement, and therefore was estopped from avoiding arbitration. *Id.* Here, Piersing signed a stand-alone arbitration agreement that compels arbitration in all claims relating to his employment with Domino's franchisees. Whether Piersing directly or indirectly benefitted from the arbitration agreements is not at issue; equitable estoppel rests on whether Piersing's claims are intertwined with the arbitration agreements.

### ii. The anti-trust claims are intertwined with the arbitration agreement

Piersing's anti-trust claims allege that Domino's is involved in an illegal civil conspiracy with its franchisees to suppress wages and employment opportunities. Piersing makes these claims pursuant to the Sherman Act (15 U.S.C. § 1, *et seq.*) and Clayton Act (15 U.S.C. § 15, *et seq.*). He further claims that the alleged conspiracy between Domino's and the franchisee signatories is not concerted misconduct. This argument is without merit.

Piersing's arbitration agreement covers all claims "arising out of or relating to Employee's employment with the Company and/or the termination of Employee's employment." [ECF 61-4, PageID.982] Piersing sues over an alleged conspiracy involving hiring, employee opportunities,

and wages. The antitrust claims are clearly intertwined with the subject of the arbitration agreements.

Equitable estoppel applies.

**B. Both arbitration agreements have valid delegation clauses**

**Blanton**

Blanton's arbitration agreement has an explicit delegation clause.

Blanton agreed to submit all covered claims to binding arbitration. His claims against Domino's are clearly within the arbitrator's jurisdiction:

> This Arbitration Agreement specifically includes all claims, disputes, and controversies by the Team Member or on the Team Member's behalf against the Company . . . Covered claims include past, current and future disputes or controversies related to a Team Member's job application, hiring, terms and conditions of employment, job assignments, payment of wages, benefits, forms of compensation, or termination from the Company. [ECF No. 61-3 at PageID.974]

The agreement also sets forth "gateway" covered claims that must be delegated to the arbitrator. They include:

> (5) Any claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement. [*Id.* at PageID.975]

This gateway clause is valid delegation of arbitrability issues to the arbitrator's jurisdiction.

**Piersing**

The delegation clause in Piersing's agreement is not as explicit as the one in Blanton's agreement. But Domino's contends that the delegation clause that governs Piersing's claims is in the contract under the heading "Arbitration Rules and Procedures," and that incorporation of this rule is a valid delegation clause. The Court agrees.

The relevant section reads:

> The American Arbitration Association ("AAA") will administer the arbitration and the arbitration will be conducted in accordance with the then-current AAA National Rules for the Resolution of Employment Disputes ("AAA Rule"). [ECF No. 61-4, PageID.982]

The applicable AAA Rule is Rule 6(a) of the Rules for the Resolution of Employment Disputes. It says "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." [ECF No. 61-6, PageID. 989]

Circuit courts are virtually united on the question of whether AAA rules are "clear and unmistakable" evidence that questions of arbitrability are for the arbitrator. They routinely hold that incorporation of AAA rules into arbitration agreements is clear evidence of intent to delegate questions of arbitrability to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (citing additional case law from seven other circuits).

Federal district courts in the Sixth Circuit regularly find that incorporation of AAA rules is clear and unmistakable evidence that questions of arbitrability are for the arbitrator. *See e.g. Aerpio Phamaceuticals, Inc. v. Quaggin*, Case No. 1:18-cv-794, 2019 WL 4717477 at *10 (S.D. Ohio Sept. 26, 2019); *Jacobs Field Services North America, Inc. v. Wacker Polysilicon North America, LLC*, 375 F.Supp.3d 898, 913 (E.D. Tenn. Mar. 15, 2019).

Although the Sixth Circuit has not definitively made such a ruling, it has delegated gateway questions of arbitrability to the arbitrator based on a contract that incorporated AAA rules. *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 590 Fed. Appx. 482, 484 (6th Cir. 2014):

> "It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation ...Any dispute or controversy that is not resolved informally ... shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association." *Id.*

The court emphasized that the words "any," "all," and "exclusively," evidenced a clear and unmistakable agreement to arbitrate according to AAA rules. *Id.* This language is similar to Piersing's arbitration agreement.

Piersing makes an unsupported argument that incorporation of AAA rules does not grant the arbitrator exclusive jurisdiction over gateway questions, and cites to inapplicable case law.

In *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) the arbitration agreement only discussed delegating individual claims to the arbitrator; the Sixth Circuit found that AAA rules did not delegate classwide claims to the arbitrator because the contract was silent on delegating classwide claims. That is not the issue before the Court. Piersing's arbitration agreement explicitly states that "no covered claims may be asserted as part of a multi-plaintiff, class or collective action. Moreover, no covered claims may proceed to arbitration on a multi-plaintiff, class or collective basis." [ECF No. 61-4, PageID.982] Piersing makes no arguments about classwide, as opposed to individual, arbitration.

In *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 95 (6th Cir. 1987) the court held that the rules of a different arbitration organization—not the AAA—were too vague to be "clear and unmistakable" evidence of intent to delegate. Piersing's agreement concerns AAA rules, and *Smith Barney* addresses a different question of law.

Neither *AlixPartners* nor *Smith Barney* is instructive.

The Court finds that incorporation of AAA rules and procedures is clear and unmistakable evidence that questions of arbitrability are for the arbitrator, and that Piersing's arbitration agreement contains a valid delegation clause.

All gateway questions related to Piersing's claims are for the arbitrator to decide.

## 2. The Court does not have jurisdiction to consider the Plaintiffs' other arguments

Blanton argues that his arbitration agreement was obtained improperly. This is a question of fact for the arbitrator. Because of the delegation clause, the Court does not have jurisdiction to consider this argument.

All questions regarding arbitrability and the merits of the claims are for the arbitrator to decide.

## IV. CONCLUSION

The Court **GRANTS** Defendants' Motion to Compel Arbitration and Dismiss. The Motion to Stay is **MOOT**.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 10/25/2019